UNITED STATES *v.* UNITED STATES FIDELITY
& GUARANTY CO. ET AL.

No. 569.   Argued February 27, 1940.—Decided March 25, 1940.

*Solicitor General Biddle,* with whom *Assistant Attorney General Littell* and *Mr. Thomas E. Harris* were on the brief, for the United States.

*Messrs. Bower Broaddus* and *Julian B. Fite* for respondents.

508

MR. JUSTICE REED delivered the opinion of the Court.

This certiorari brings two questions here for review: (1) Is a former judgment against the United States on a cross-claim, which was entered without statutory authority, fixing a balance of indebtedness to be collected as provided by law, res judicata in this litigation for collection of the balance; and (2) as the controverted former judgment was entered against the Choctaw and Chickasaw Nations, appearing by the United States, does the jurisdictional act of April 26, 1906, authorizing adjudication of cross demands by defendants in suits on behalf of these Nations, permit the former credit, obtained by the principal in a bond guaranteed by the sole original defendant here, to be set up in the present suit.

Certiorari was granted [1] because of probable conflict, on the first question, between the judgment below and *Adams* v. *United States* [2] and because of the importance of clarifying the meaning of the language in *United States* v. *Eckford* [3] relating to the judicial ascertainment

[1] 308 U. S. 548.
[2] 3 Ct. Cls. 312.
[3] 6 Wall. 484.

of the indebtedness of the Government on striking a balance against the United States where cross-claims are involved. A somewhat similar question arises in *United States* v. *Shaw*.[4] The second question was taken because its solution is involved in certain phases of this litigation.

The United States, acting for the Choctaw and Chickasaw Nations, leased some coal lands to the Kansas and Texas Coal Company, with the respondent United States Fidelity and Guaranty Company acting as surety on a bond guaranteeing payment of the lease royalties. By various assignments the leases became the property of the Central Coal and Coke Company, as substituted lessee, the Guaranty Company remaining as surety. The Central Coal and Coke Company went into receivership in the Western District of Missouri, and the United States filed a claim for the Indian Nations for royalties due under the leases. Answering this claim, the Central Coal and Coke Company denied that any royalties were owing and claimed credits against the Nations for $11,060.90. By order of the court, reorganization of the Coal Company under § 77B of the Bankruptcy Act was instituted and the trustee took possession from the receivers. In the reorganization proceedings the claim of the Nations was allowed for $2,000, the debtor's cross-claim was allowed for $11,060.90, and the court on February 19, 1936, decreed a balance of $9,060.90 in favor of the debtor, to be "collected in the manner provided by law." No review of this judgment of the Missouri district court was ever sought.

On December 24, 1935, the United States, on its own behalf and on behalf of the Indian Nations, filed the present suit in the Eastern District of Oklahoma against the Guaranty Company, as surety on the royalty bond, for the same royalties involved in the Missouri proceed-

---

[4] *Ante,* p. 495.

ings. After the judgment of the Missouri district court, the Guaranty Company pleaded that judgment as a bar to recovery by the United States. The trustee of Central Coal and Coke Company, and the Central Coal and Coke Corporation, which had taken over certain interests in the assets of the Coal Company, alleged by a petition for leave to intervene, and, upon its allowance without objection, by an intervening petition, that they were necessary and proper parties because each had an interest in the judgment of the Missouri court; they pleaded the Missouri judgment as determinative and pleaded the merits of the counterclaims by setting up the facts which supported the judgment; they asked for a decree that the Missouri judgment was valid, for a determination of accounts between themselves and the Indian Nations, and for all other proper relief. Replying to the answer of the surety and the petition of the interveners, the United States pleaded that the Missouri judgment was void as to the interveners' cross-claims because the court was "without jurisdiction to render the judgment" against the United States and denied the cross-claims on the merits. The district court concluded that the Missouri judgment barred the claim against the surety and entitled the interveners to a judgment against the Indian Nations in the amount of the balance found by the Missouri court. This judgment the Circuit Court of Appeals affirmed.[5]

A.—By concession of the Government the validity of so much of the Missouri judgment as satisfies the Indian Nations' claim against the lessee is accepted. This concession is upon the theory that a defendant may, without statutory authority, recoup on a counterclaim an amount equal to the principal claim.[6]

---

[5] 106 F. 2d 804.

[6] *Bull* v. *United States*, 295 U. S. 247, 261.

B.—We are of the view, however, that the Missouri judgment is void in so far as it undertakes to fix a credit against the Indian Nations. In *United States* v. *Shaw* [7] we hold that cross-claims against the United States are justiciable only in those courts where Congress has consented to their consideration. Proceedings upon them are governed by the same rules as direct suits. In the Missouri proceedings in corporate reorganization, the United States, by the Superintendent of the Five Civilized Tribes for the Choctaw and Chickasaw Nations, filed a claim on behalf of the Indian Nations. This it is authorized to do.[8] No statutory authority granted jurisdiction to the Missouri Court to adjudicate a cross-claim against the United States.[9] The public policy which exempted the dependent as well as the dominant sovereignties from suit without consent [10] continues this immunity even after dissolution of the tribal government. These Indian Nations are exempt from suit without Congressional authorization.[11] It is as though the immunity which was theirs as sovereigns passed to the United States for their benefit, as their tribal properties did.

---

[7] *Ante*, p. 495.

[8] *Heckman* v. *United States*, 224 U. S. 413, 442; *Mullen* v. *United States*, 224 U. S. 448, 451; *United States* v. *Rickert*, 188 U. S. 432. These cases discuss, also, the relationship between the United States and the Choctaw and Chickasaw Nations. See also *United States* v. *Choctaw etc. Nations*, 179 U. S. 494, 532; *Choctaw Nation* v. *United States*, 119 U. S. 1, 28.

Act of June 7, 1897, 30 Stat. 62, 83; Atoka Agreement, 30 Stat. 495, 505; Act of March 3, 1901, 31 Stat. 1447; Act of April 26, 1906, 34 Stat. 137, 144. Under § 28 of the Act of April 26, 1906, the tribal existence of the Chickasaw and Choctaw Nations is continued as modified by that and other acts.

[9] Cf. *United States* v. *Algoma Lumber Co.*, 305 U. S. 415.

[10] Cf. *Cherokee Nation* v. *Georgia*, 5 Pet. 1.

[11] *Turner* v. *United States*, 248 U. S. 354, 358; *Adams* v. *Murphy*, 165 F. 304, 308; *Thebo* v. *Choctaw Tribe of Indians*, 66 F. 372.

Possessing this immunity from direct suit, we are of the opinion it possesses a similar immunity from cross-suits. This seems necessarily to follow if the public policy which protects a quasi-sovereignty from judicial attack is to be made effective. The Congress has made provision for cross-suits against the Indian Nations by defendants.[12] This provision, however, is applicable only to "any United States court in the Indian Territory." Against this conclusion respondents urge that as the right to file the claim against the debtor was transitory, the right to set up the cross-claim properly followed the main proceeding.[13] The desirability for complete settlement of all issues between parties must, we think, yield to the principle of immunity. The sovereignty possessing immunity should not be compelled to defend against cross-actions away from its own territory or in courts not of its own choice, merely because its debtor was unavailable except outside the jurisdiction of the sovereign's consent. This reasoning is particularly applicable to Indian Nations with their unusual governmental organization and peculiar problems.

But, it is said that there was a waiver of immunity by a failure to object to the jurisdiction of the Missouri District Court over the cross-claim. It is a corollary to immunity from suit on the part of the United States and the Indian Nations in tutelage that this immunity cannot be waived by officials. If the contrary were true, it would subject the Government to suit in any court in the discretion of its responsible officers. This is not permissible.[14]

---

[12] Act of April 26, 1906, § 18, 34 Stat. 137, 144, 148.

[13] Cf. *Fidelity Ins., Trust and S. D. Co.* v. *Mechanics' Sav. Bank*, 97 F. 297, 303.

[14] *Minnesota* v. *United States*, 305 U. S. 382, 388 and cases cited; *Munro* v. *United States*, 303 U. S. 36, 41; *Finn* v. *United States*, 123 U. S. 227, 232.

The reasons for the conclusion that this immunity may not be waived govern likewise the question of res judicata. As no appeal was taken from this Missouri judgment, it is subject to collateral attack only if void. It has heretofore been shown that the suability of the United States and the Indian Nations, whether directly or by cross-action, depends upon affirmative statutory authority. Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void. The failure of officials to seek review cannot give force to this exercise of judicial power. Public policy forbids the suit unless consent is given, as clearly as public policy makes jurisdiction exclusive by declaration of the legislative body.[15] *Chicot County Drainage District* v. *Baxter State Bank*[16] is inapplicable where the issue is the waiver of immunity.

In the *Chicot County* case no inflexible rule as to collateral objection in general to judgments was declared. We explicitly limited our examination to the effect of a subsequent invalidation of the applicable jurisdictional statute upon an existing judgment in bankruptcy.[17] To this extent the case definitely extended the area of adjudications that may not be the subject of collateral attack. No examination was made of the susceptibility to such objection of numerous groups of judgments concerning status,[18] extra-territorial action of courts,[19] or strictly jurisdictional and quasi-jurisdictional facts.[20] No solution was attempted of the legal results of a collision between the desirable principle that rights may be ade-

---

[15] *Kalb* v. *Feuerstein*, 308 U. S. 433.

[16] 308 U. S. 371.

[17] See the last paragraph of the opening statement and the first paragraph of division *Second*. 308 U. S. 374, 376.

[18] *Andrews* v. *Andrews*, 188 U. S. 14.

[19] *Fall* v. *Eastin*, 215 U. S. 1.

[20] *Noble* v. *Union River Logging R. Co.*, 147 U. S. 165; cf. *Johnson* v. *Zerbst*, 304 U. S. 458.

quately vindicated through a single trial of an issue and the sovereign right of immunity from suit. We are of the opinion, however, that without legislative action the doctrine of immunity should prevail.

C.—The conclusion that the Missouri judgment is void determines this review. There is left in the case, however, an issue which requires brief reference to the second question upon which certiorari was granted. The intervening petition set up the facts supporting the claim of the interveners against the Indian Nations. An issue was made and the evidence of the Missouri controversy stipulated for consideration in the present case. As the district court determined that the Missouri judgment was valid, no finding or conclusion appeared in the judgment of the district court upon the merits. Respondents made no objection to this omission but call attention to it in their brief. On a new trial this issue obviously will be important.

It is the contention of the Government that the cross-claim cannot be liquidated in this proceeding for the reason that by the statute under which this suit is brought, the right to set up a cross-claim is limited to "party defendants." [21] Respondents' reply that as they were admitted as interveners without objection, as they have an interest in cross-claims arising from the same transactions which form the basis of the principal suit, and as one of them is a principal liable for any judgment against

---

[21] 34 Stat. 137, § 18:

"Where suit is now pending, or may hereafter be filed in any United States court in the Indian Territory, by or on behalf of any one or more of the Five Civilized Tribes to recover moneys claimed to be due and owing to such tribe, the party defendants to such suit shall have the right to set up and have adjudicated any claim it may have against such tribe; and any balance that may be found due by any tribe or tribes shall be paid by the Treasurer of the United States out of any funds of such tribe or tribes upon the filing of the decree of the court with him."

the defendant surety, they are to all intents and purposes defendants under § 18 of the Act of April 26, 1906.

As this judgment was entered before the effective date of the Civil Rules, procedure as to parties was governed by the Conformity Act.[22] Apparently under Oklahoma law the principal in the bond could not compel its admission as a party defendant.[23] As the Government did not object to the order filing the intervening petition, we assume it properly filed and that the trustee for the Coal Company was actually a defendant. The name used is immaterial.

Whether the Coal Company was such a defendant as was meant by § 18 raises other questions. Since they depend upon an interpretation of the federal statute they are to be determined by federal, not Oklahoma, law.[24] As the extent and character of the interest of the assignee Coal Corporation in the unliquidated claims of the Company do not appear from the record, we do not pass upon the question of whether the Company defendant has any cross-claim against the Indian Nations, after satisfaction of the Indian Nations' claim against it or whether, if there is such a claim, owned jointly with the Corporation, it is a claim the Company may enforce as defendant under § 18.

The cause is reversed and remanded to the district court for further proceedings in accordance with this opinion.

*Reversed.*

MR. JUSTICE McREYNOLDS took no part in the decision of this case.

---

[22] R. S. 914; *Sawin* v. *Kenny,* 93 U. S. 289; *United Mine Workers* v. *Coronado Co.,* 259 U. S. 344, 382.

[23] *Fidelity & Deposit Co.* v. *Sherman Machine & Iron Works,* 62 Okla. 29.

[24] *Board of County Commissioners* v. *United States,* 308 U. S. 343, and *Deitrick* v. *Greaney, ante,* p. 190.