No. 80-275

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

MADELINE COLLIFLOWER,

Plaintiff and Appellant,

vs.

THE FORT BELKNAP COMMUNITY COUNCIL,
THE FORT BELKNAP TRIBE OF INDIANS and
THE FORT BELKNAP COMMUNITY ACTION PROGRAM,

Defendants and Respondents.

---

Appeal from:  District Court of the Twelfth Judicial District,
In and for the County of Blaine.
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Spangelo Law Firm, Havre, Montana
James Spangelo argued, Havre, Montana

For Respondents:

Francis X. Lamebull argued, Harlem, Montana

---

Submitted: April 24, 1981
Decided: 5-28-81

Filed: 5 28-81

---

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

Madeline Colliflower, an enrolled member of the Fort Belknap Tribe, appeals from an order of the District Court of the Twelfth Judicial District, Blaine County, granting the respondents' motion to dismiss and rendering moot her motion for summary judgment. Respondents' motion to dismiss was made after its answer and, therefore, is considered a motion for judgment on the pleadings. Rule 12(c), M.R.Civ.P. Additionally the appellant's complaint failed to specifically allege jurisdiction, however, we are able to glean sufficient facts from the pleadings to resolve the jurisdictional issue.

The appellant was hired by the Fort Belknap Tribe (tribe) in May of 1972 as director of the Fort Belknap Indian Community Action Program (CAP). The program was funded under a grant from the Office of Native American Programs of the Department of Health, Education and Welfare and was intended for the promotion of tribal economic self-sufficiency. The appellant was fired June 23, 1976, following a hearing before the Fort Belknap Community Council concerning allegations of official neglect and gross mis-management.

The appellant first sued the respondents in federal court, alleging wrongful termination of employment. On January 19, 1979, the case was dismissed. The federal court held the action of the Fort Belknap Community Council was in a "wholly governmental capacity", and therefore, they were immune from suit.

The appellant then filed a complaint in the Twelfth Judicial District, which is the basis of this appeal, alleg-

-2-

ing breach of contract, tort and denial of due process. The lower court dismissed the action in its order of July 7, 1980:

> "The Court concludes that the activities we deal with here are governmental functions of the tribal entity; that the Fort Belknap Indian Community and its agencies who are defendants in this action are immune from suit in the absence of an express waiver; that there has been no such waiver as to the tribal entity. Consequently, defendant's motion to dismiss should be granted. Plaintiff's motion will thereby be rendered moot."

The issues presented are (1) whether the District Court's finding of purely governmental activity by the tribe is supported by the record and (2) whether the District Court properly rejected appellant's claim of an implied waiver of tribal immunity. We agree with the District Court and affirm its order.

Before discussing the merits of this appeal, we must briefly explain the internal organization of the Fort Belknap Tribe.

Under authority of the Indian Reorganization Act of June 18, 1934, Ch. 576, 48 Stat. 984, as amended, 25 U.S.C., §§ 461-479, Indians were authorized to organize for purposes of local self-government through the adoption of constitutions (section 16) and corporate charters (section 17). The Fort Belknap Tribe ratified both. Its constitution was ratified in 1935, and its corporate charter in 1937.

The general difference between constitutional and corporate entities was discussed in an opinion of the Solicitor, Department of the Interior:

> "The purpose of Congress in enacting Section 16 of the Indian Reorganization Act was to facilitate and to stabilize the tribal organization of Indians residing on the same reservation, for their common welfare. It provided their political organization. The purpose of Congress in enacting Section 17 of the Indian Reorganization Act was to empower the Secretary to issue a charter of business

incorporation to such tribes to enable them to conduct business through this modern device, which charter cannot be revoked or surrendered except by Act of Congress. This corporation, although composed of the same members as the political body, is to be a separate entity, and thus more capable of obtaining credit and otherwise expediting the business of the Tribe . . ." No. M-36515, 65 Int. Dec. 483 (November 20, 1958).

See generally, Comment, Tribal Self-Government and the Indian Reorganization Act of 1934, 70 Mich.L.Rev. 955 (1972).

The governmental entity of the Fort Belknap Tribe retains its sovereign immunity to the extent not expressly waived or restricted by Congress. The corporation, however, is empowered:

"To sue and to be sued in courts of competent jurisdiction within the United States; but the grant or exercise of such power to sue and to be sued shall not be deemed a consent by the Community or by the United States to the levy of any judgment, lien or attachment upon the property of the Community other than income or chattels specially pledged or assigned." Corporate Charter of the Fort Belknap Indian Community of the Fort Belknap Indian Reservation, ratified August 25, 1937.

While recognizing the general principles of Indian immunity, appellant argues the Fort Belknap Tribe no longer enjoys the privilege. The argument is not supported by evidence of actual corporate activity but rather a speculative legal theory. Appellant contends that by adopting a business corporation pursuant to section 17 the governmental entity merged with the corporate entity, thereby completely waiving the tribe's immunity.

The District Court considered appellant's merger theory and rejected it concluding:

"Here, the showing is that the Community Action program was developed through the Native American Programs as a result of the special relationship which exists between the federal government and Indians and Indian tribes for the purpose of advancing the welfare of the Indians. Agreed that a principal purpose was to improve the economic and social conditions of the Community, that purpose is a proper governmental function. Conceivably, certain business projects might result directly or indirectly from the program, and if

such projects should be undertaken by the Community, the corporate entity might well be involved. No commercial or business activity is involved here."

The judgment must be affirmed. First, appellant has failed to carry her burden of proof regarding the claim that the Community Council was acting under color of its corporate charter. The record contains no affirmative evidence to support such a contention.

Second, appellant's merger theory is not supported by any authority reviewed by this Court and, in fact, conflicts with current Indian law principles. The theory rests upon the untenable foundation of an implied waiver of immunity.

In Santa Clara Pueblo v. Martinez (1978), 436 U.S. 49, 56 L.Ed.2d 106, 98 S.Ct. 1670, the Supreme Court decided whether a federal court may pass on the validity of a tribal ordinance denying membership to the children of female members who married outside the tribe. The action was brought under Title Ⅱ of the Indian Civil Rights Act of 1968 (ICRA), 25 U.S.C., §§ 1301-1303. In holding the Act doesn't impliedly authorize such actions, the court discussed the nature of tribal immunity:

> "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers. Turner v. United States, 248 U.S. 354, 358 (1919); United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 512-513 (1940); Puyallup Tribe v. Washington Dept. of Game, 433 U.S. 165, 172-173 (1977). This aspect of tribal sovereignty, like all others, is subject to the superior and plenary control of Congress. But 'without congressional authorization,' the 'Indian Nations are exempt from suit.' United States v. United States Fidelity & Guaranty Co., supra, at 512.

> "It is settled that a waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.' United States v. Testan, 424 U.S. 392, 399 (1976), quoting, United States v. King, 395 U.S. 1, 4 (1969)." (Emphasis added.) Santa Clara Pueblo, 436 U.S. at 58.

-5-

In summary, we find the Community Council acted solely in its governmental capacity in the termination of the appellant and concur with the rejection of the notion that tribal ratification of a section 17 corporate charter subsumes, and thereby merges, an existent section 16 tribal sovereign. An implied waiver is impermissible; the waiver must be express.

The judgment of the District Court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices