# Supreme Court of the Navajo Nation

**TBI Contractors, Inc.,**
**an Arizona Corporation, Plaintiff-Appellant,**
v.
**The Navajo Tribe of Indians, et al.,**
**Defendants-Appellees.**
**Decided August 12, 1988**

## OPINION

Before BLUEHOUSE, Acting Chief Justice, AUSTIN and CADMAN (sitting by designation), Associate Justices.

Robert J. Wilson, Esq. , Gallup, New Mexico, for the Appellant; Herb Yazzie, Esq., Navajo Nation Department of Justice, Window Rock, Arizona, for the Appellees.

Opinion delivered by CADMAN, Associate Justice.

This matter comes before the Supreme Court on appeal from the lower court's order dismissing the appellant's action with prejudice for lack of jurisdiction.

This Court must address three issues in this appeal. The first issue is whether the district court had subject matter jurisdiction over this cause of action pursuant to one of the exceptions set forth in the 1980 Navajo Sovereign Immunity Act. The second issue is whether the Navajo Nation's filing of a compulsory counter-claim in its answer waives its sovereign immunity from suit. The third issue is whether the Navajo Nation violated the appellant's civil rights by dismissing the suit.

I

On November 17, 1981, the Navajo Nation drafted a contract with Mandan-TBI (joint venture partners) to have a shopping center built in Tuba City, Arizona for $2,639,000.00. On January 5, 1982, the Budget and Finance Committee of the Navajo Tribal Council passed Resolution BFJA-5-82, approving the contract between the Navajo Nation and Mandan-TBI to construct the Tuba City Shopping Center.[1] Chairman Peter MacDonald signed the contract on January 8, 1982.

After TBI began construction, the Navajo Nation discovered an error in the topographical elevation of the shopping center.[2] On March 3, 1982, the Navajo Nation authorized a "Change Order" directing TBI to raise the elevation of the shopping center by four (4) feet.[3] TBI corrected the elevation as directed by the Navajo Nation. TBI alleges that the Navajo Nation also directed additional testing and removal of concrete. However, the record shows no change order for the additional testing and removal of concrete.

TBI requested additional payments of $140,453.00 for the change in the topographical elevation and $62,300.37 for the additional testing and removal of concrete. The Navajo Nation refused to make additional payments for the change order due to the surveying error on the part of a third party subcontractor hired by Mandan-TBI. The Navajo Nation refused to make additional payments for TBI's alleged testing and removal of concrete as there was no change order made or approved.

After the Navajo Nation refused to make additional payments for the change order, TBI filed the first case (WR-CV-174-84) on April 25, 1984, in the Window Rock District Court of the Navajo Nation. On July 2, 1984, the Navajo Nation filed an answer and a compulsory counterclaim. The counterclaim alleged that TBI had breached the contract by unsatisfactorily performing numerous items.[4] The Navajo Nation also claimed that due to TBI's breach and inability to complete the construction within the time authorized, the Navajo Nation lost rent, suffered damage to its reputation with numerous funding sources, was forced to retain other firms to test TBI's work and will be forced to spend more money to correct the defective work and complete the job as was required by the contract. The Navajo Nation prayed for $176,612.00 in damages in its counterclaim.

On August 16, 1984, the district court scheduled a hearing for October 3, 1984; notice was sent to both parties. On October 3, 1984, neither party appeared for the scheduled hearing. The court then dismissed the first case and the counterclaim with prejudice. On October 15, 1984, TBI filed a motion to reopen the case which had been dismissed on October 3, 1984. On November 27, 1984, the

---

1. The resolution also set forth the funding for the Tuba City Shopping Center. The Economic Development Administration (EDA) granted $1,464,000.00; the Department of Housing and Urban Development (HUD) awarded a block grant of $903,820.00; Bashas Market, Inc., the anchor tenant for the shopping center, contributed $44,000.00; and the Navajo Tribal Council allocated matching funds of $174,180.00.

2. The Navajo Nation asserts that a third party (Parker, Johnson and Associates, Consulting Engineers, Inc.) is responsible for the topographical error. And that the third party's error in surveying the construction site, preparing the topographical map and staking out the field resulted in the issuance of the change order.

3. The "Change Order" signed on March 3, 1982 stated:

You are directed to make the following changes in this Contract:

1. Change all elevations as indicated on the revised site plan dated 1/5/82 as prepared by Parker, Johnson & Associates on sheet C-5. Please proceed with the work immediately. Additional cost will be determined after proper negotiations on earthworks have been justified.

4. Among the items that the Navajo Nation claimed were defective are: heaved floors, cracks in masonry, leaks in the roof, and un-square door jambs.

Navajo Nation filed a motion to dismiss the first case for lack of jurisdiction. The Navajo Nation claimed in its motion that the case was barred by the Navajo Sovereign Immunity Act.

On July 2, 1984, TBI filed the second case (WR-CV-274-84) alleging that the Navajo Nation failed to pay for the additional testing and removal of concrete performed by TBI. On October 5, 1984, the tribe filed an answer and a compulsory counterclaim. The compulsory counterclaim in the second suit was substantially the same as in the first case. On November 21, 1984, the Navajo Nation filed a motion to dismiss the second case for lack of jurisdiction, claiming that the case was barred by the Navajo Sovereign Immunity Act .

On December 5, 1984, the court, by stipulation of the parties, entered an order consolidating the two cases. The court also set aside the order dismissing the first case.

On September 6, 1985, the court scheduled a pre-trial conference for October 10, 1985; notice was sent to both parties. TBI failed to appear at the October 10, 1985 pre-trial conference. On October 14, 1985, the court dismissed the consolidated action with prejudice for lack of jurisdiction and dismissed the counterclaims without prejudice. The district court found that the action was barred by the 1980 Navajo Sovereign Immunity Act. The record shows no reason given for TBI's failure to appear at the October 14, 1985 pre-trial conference.

TBI received notice of the dismissal on October 18, 1985, and filed both a motion for reconsideration with the district court, and a notice of appeal with this Court on November 14, 1985. On November 15, 1985, the district court denied the motion for reconsideration.

## II

This Court recognizes the right of the Navajo Nation to assert the defense of sovereign immunity in suits brought against it. *Dennison v. Tucson Gas and Electric Co.*, 1 Nav. R. 95 (1974); *Halona v. MacDonald*, 1 Nav. R. 189 (1978); *Keeswood v. The Navajo Tribe*, 2 Nav. R. 46 (1979). This Court also recognizes certain exceptions to the defense of sovereign immunity. Sovereign immunity does not extend to protect tribal officials who act outside the law. *Halona*, 1 Nav. R. at 202. In this case, originally filed in the district court on April 25, 1984, the 1980 enactment of the Navajo Sovereign Immunity Act, 7 N.T.C. §§ 851 to 855, will determine whether the Navajo Nation waived its immunity from suit. Under the 1980 Navajo Sovereign Immunity Act, the Navajo Nation may be sued in Navajo courts: (1) when explicitly authorized by federal laws or regulations; (2) when explicitly authorized by resolution of the Navajo Tribal Council; (3) with respect to any claim for which the Navajo Nation carries liability insurance; (4) to compel any officer, employee or agent of the Navajo Nation to perform his or her responsibility under the laws of the United States and the Navajo Nation; and (5) for attorney malpractice if authorized by the Advisory Committee of the

Navajo Tribal Council. 7 N.T.C. § 854(a), (b), (c), (d), and (e) (1983 Supp.). The appellant relies only on Section 854(a), (b), and (d) in this appeal.

A

TBI first argues that it should be allowed to sue the Navajo Nation under the federal laws or regulations exception to the Navajo Sovereign Immunity Act. 7 N.T.C. § 854(a). TBI claims that the Indian Civil Rights Act (ICRA), 25 U.S.C. §§ 1301 to 1303, is the federal law which authorizes this suit against the Navajo Nation. TBI's claim has, however, been considered and rejected by both this Court and the United States Supreme Court.

In *Santa Clara Pueblo v. Martinez,* the United States Supreme Court ruled that the ICRA did not waive a tribe's immunity from suit. 436 US. 49, 59, 56 L.Ed. 2d 106, 115 (1978). Although *Martinez, id.,* dealt with a suit against a tribe in federal court, we found the reasoning sound and followed it in *Johnson v. The Navajo Nation,* 5 Nav. R. 192, 199 (1987). In *Johnson,* we "agree[d] with the United States Supreme Court that the ICRA does not expressly waive the sovereign immunity of the Indian Tribes, including the Navajo Nation in any court." The ICRA is federal law, which is applicable to the Navajo Nation, but it does *not expressly* waive the Navajo Nation's immunity from suit as required by our statute. Our statute requires the federal law or regulation relied upon to *explicitly* state that the Navajo Nation may be sued. 7 N.T.C. § 854(c). The ICRA is applicable to civil rights grievances brought against an Indian tribe. In this case, TBI's suits were brought as breach of contract actions against the Navajo Nation. Because this case is strictly a breach of contract action, TBI's argument that the tribe took its property without due process of law in violation of the ICRA is misplaced. Even TBI, in its brief, has reiterated numerous times that this is a breach of contract action. We hold that there has been no explicit congressional waiver of the Navajo Nation's sovereign immunity for this suit, and therefore, the suit may not proceed under 7 N.T.C. § 854(a).

B

TBI next contends that it can sue the Navajo Nation because this suit is explicitly authorized by resolution of the Navajo Tribal Council. 7 N.T.C. § 854(b). TBI claims that the Navajo Bill of Rights, 1 N.T.C. §§ 1-9 (1967), authorizes this suit. In addition TBI cites 7 N.T.C. § 204(a) (1977), as authorizing actions for violations of civil rights. 7 N.T.C. § 204(a) states that:

> In all civil cases, the Court of the Navajo Tribe shall apply any laws of the United States that may be applicable, any authorized regulations of the Interior Department, and any ordinances or customs of the Tribe, not prohibited by such Federal laws.

We disagree with TBI's position that 7 N.T.C. § 204(a) authorizes suits against the Navajo Tribe if a violation of civil rights is asserted. Neither the Navajo Bill of Rights, 1 N.T.C. §§ 1-9, nor 7 N.T.C. § 204(a) explicitly authorizes suits against the Navajo Nation. We must follow the intent of the Navajo Tribal Council when interpreting the Navajo Tribal Code. As such, we may not construe the word "explicitly" as meaning anything other than an unambiguous expression, clear in understanding.

As we have already stated, this is a breach of contract action brought against the Navajo Nation, therefore, arguments of civil rights abuse under the Navajo Bill of Rights is inappropriate. TBI also did not sue for civil rights claims. Instead of arguing civil rights violations, TBI should have argued whether any provisions in the contract waived the tribe's immunity from suit.

We hold that, in this case, the Navajo Tribal Council has not waived the Navajo Nation's immunity from suit under the Navajo Bill of Rights, or 7 N.T.C. § 204(a), and therefore, the suit may not proceed under 7 N.T.C. § 854(b).

## C

TBI finally contends that the Navajo Nation's sovereign immunity was waived pursuant to 7 N.T.C. § 854(d), which states "[a]ny officer, employee or agent of the Navajo Nation may be sued in the Courts of the Navajo Nation to compel him/her to perform his/her responsibility under the laws of the United States and the Navajo Nation." The relief under this section of the Navajo Tribal Code is limited to declaratory or injunctive relief. TBI prays for money damages in its complaint, therefore, this section is inapplicable to the case at bar. We hold that, as this is a breach of contract action for money damages, the suit may not proceed under 7 N.T.C. § 854(d).

## III

The second issue raised in this appeal is whether the Navajo Nation's filing of a compulsory counterclaim in its answer waived its immunity from suit. We hold that it did not. The 1980 Navajo Sovereign Immunity Act, 7 N.T.C. §§ 851 to 855, does not allow implied waivers of the Navajo Nation's immunity from suit. Only an unequivocally expressed waiver is allowed by the 1980 Navajo Sovereign Immunity Act.

We hold that, in accordance with the 1980 Navajo Sovereign Immunity Act, the waiver of Navajo immunity from suit must always be unequivocally expressed. *See Santa Clara Pueblo*, 436 U.S. 49, 56 L.Ed. 2d 106; *United States v. U.S. Fidelity & Guart. Co.*, 309 U.S. 506, 84 L.Ed. 894 (1940). In the absence of expressed authorization, the doctrine of sovereign immunity should prevail. *See U.S. Fidelity & Guaranty Co.*, 309 U.S. 506, 84 L.Ed. 894. Therefore, the filing of a compulsory counterclaim by the Navajo Nation does not waive its immunity from suit.

## IV

The final issue in this appeal is whether the Navajo Nation violated the appellant's civil rights by asserting the defense of sovereign immunity, and thus barring the appellant's suits and any possible form of judicial relief. Just because TBI's suits are barred by the Tribe's immunity from suit does not turn these actions into a suit for violation of civil rights. The actions presented by TBI were strictly based upon an alleged breach of contract by the Navajo Nation. Neither have we found law that would allow this suit to proceed simply because TBI has asserted that because immunity from suit is a bar, its civil rights are violated. Even our review of the record has not turned up any civil rights violations. We hold that these actions were brought upon an alleged breach of contract; therefore, the allegations of violations of civil rights are meritless.

## V

We would like to conclude that the Navajo Tribal Council must look forward to the goal of economic development in future amendments to the Navajo Sovereign Immunity Act. One of the most severe problems facing the Navajo Nation is that of unemployment caused by the lack of economic development within the Navajo Nation. One path in which the Navajo Nation may strengthen its economic base is by drawing companies onto Navajo Indian Country. If the Navajo Nation is to compete with the states for industrial and business contracts, the Navajo Tribal Council must allow for contractual waivers of the tribe's immunity from suit. The Navajo Tribal Council may achieve this contractual waiver of immunity from suit through an amendment to the Navajo Sovereign Immunity Act, or through the inclusion of individual waivers written into each contract. The Navajo Nation must realize that private corporations will not choose Navajo Indian Country to do business on, unless they know that they will have a forum in which they will receive a fair hearing in the event of a contract dispute.

The order of the district court dismissing the appellant's action, with prejudice for lack of subject matter jurisdiction, is affirmed.