888 F.2d 1303
 14 Fed.R.Serv.3d 1491
 The CITIZEN BAND POTAWATOMI INDIAN TRIBE OF OKLAHOMA,
Plaintiff-Appellant/Cross-Appellee,
v.
The OKLAHOMA TAX COMMISSION; Cindy Rambo, Chairman of the
Tax Commission; Robert L. Wadley, Vice Chairman of the Tax
Commission; and Don Kilpatrick, Secretary of the Tax
Commission, Defendants-Appellees/Cross-Appellants.
 Nos. 88-2160, 88-2172.
 United States Court of Appeals,
Tenth Circuit.
 Nov. 3, 1989.
 
 Michael Minnis (David McCullough, with him on the briefs), of Michael Minnis & Associates, P.C., Oklahoma City, Okl., for plaintiff-appellant/cross-appellee.
 David Allen Miley, Asst. Gen. Counsel, Oklahoma Tax Com'n, Oklahoma City, Okl., for defendants-appellees/cross-appellants.
 Before McKAY, BARRETT, and SEYMOUR, Circuit Judges.
 McKAY, Circuit Judge.
 
 
 1
 This case revolves around an attempt by Oklahoma to tax cigarettes sold by the Citizen Band Potawatomi Indian Tribe of Oklahoma (the "Potawatomis" or the "Tribe") in a convenience store which the Tribe wholly owns and operates. The store was constructed with federal funds and located on land held in trust by the federal government which is "exempt from State and local taxation." 25 U.S.C.A. Sec. 465. In February of 1987 the Oklahoma Tax Commission sought to collect state cigarette taxes from the Indian tribes and their licensees. In moving against the Potawatomis, Oklahoma served a $2.7 million assessment letter on the Potawatomis' Business Committee Chairman, who would be personally liable if Oklahoma prevailed. The Potawatomis immediately sought an injunction in the district court of Oklahoma to prevent this. Oklahoma then revoked the assessment against the Chairman and proceeded against the Tribe itself.
 
 
 2
 The trial court granted the Potawatomis a preliminary injunction and enjoined Oklahoma from enforcing the cigarette tax against the Tribe, pending this suit. Oklahoma asserted a counterclaim asking the trial court to: (1) assume jurisdiction over all matters; (2) issue declaratory relief setting forth the rights and jurisdiction of the parties; (3) declare that Oklahoma had jurisdiction to tax the Potawatomis' sales; (4) declare that Oklahoma may enforce its tax laws against the Potawatomis by way of assessments and injunctions; and (5) enjoin the Potawatomis from selling cigarettes on which no state excise or sales taxes are collected or remitted.
 
 
 3
 In response, the Potawatomis moved to dismiss Oklahoma's counterclaim, arguing that the trial court lacked subject matter jurisdiction over the claims raised in the counterclaim. The Potawatomis argued further that the court lacked jurisdiction over the Tribe because the Tribe enjoys sovereign immunity and cannot be sued unless the Tribe consents. The trial court denied the Potawatomis' motion to dismiss on the ground that the counterclaim was a compulsory counterclaim under Fed.R.Civ.P. 13(a) and that it "needs no independent jurisdictional basis." Moreover, the court held that the Potawatomis had waived their sovereign immunity noting that the "relief sought by the defendants [Oklahoma] is so intertwined with the relief sought by the plaintiff [Potawatomis] that the counterclaim falls within the scope of waiver contained in the plaintiff's complaint." Document No. 32, Order, filed May 29, 1987, at 3-4.
 
 
 4
 The Potawatomis filed a motion for a new trial, contending that Fed.R.Civ.P. 13(a) was not a congressional waiver of the Potawatomis' sovereign immunity. The trial court denied the Tribe's motion, and they appeal both the denial of their motion to dismiss and their motion for a new trial. The Potawatomis also claim error in the trial court's ruling that sales of cigarettes to nontribal members may be taxed. Oklahoma cross-appeals claiming that the court erred in holding that the Tribe and its members who purchase cigarettes are tax exempt.
 
 
 5
 Here, the district court's denial of the Potawatomis' motions to dismiss and for a new trial present primarily questions of law. As an appellate court, therefore, we review de novo the district court's rulings on those motions. See, e.g., Morgan v. City of Rawlins, 792 F.2d 975, 978 (10th Cir.1986); In re Tri-State Equipment, Inc., 792 F.2d 967, 970 (10th Cir.1986); Supre v. Ricketts, 792 F.2d 958, 961 (10th Cir.1986).
 
 I. Tribe's Motion to Dismiss Counterclaim
 
 6
 Indian tribes have sovereign immunity from suits to which they do not consent, subject to the plenary control of Congress. See United States v. United States Fidelity and Guaranty Co., 309 U.S. 506, 512, 60 S.Ct. 653, 656, 84 L.Ed. 894 (1940); Puyallup Tribe, Inc. v. Dept. of Game, 433 U.S. 165, 172-73, 97 S.Ct. 2616, 2621-22, 53 L.Ed.2d 667 (1977). The Supreme Court has held that an Indian tribe does not consent to suit on a counterclaim merely by filing as a plaintiff. See Fidelity and Guaranty Co., 309 U.S. at 513, 60 S.Ct. at 656. "Although the precise limits of this tribal immunity are not clear, ... it is generally coextensive with that of the United States." Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324, 1344 (10th Cir.1982).
 
 
 7
 In Chemehuevi Indian Tribe v. California Bd. of Equalization, 757 F.2d 1047 (9th Cir.), rev'd on other grounds, 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985), the Ninth Circuit held:
 
 
 8
 [T]he compulsory counterclaim requirement of Rule 13(a) of the Federal Rules of Civil Procedure cannot be viewed as a congressional waiver of the Tribe's immunity....
 
 
 9
 ... Rule 13(a) is explicitly intended to require joinder of only those claims that might otherwise be brought separately. The authorizing statute for the Federal Rules of Civil Procedure specifies that the rules "shall not abridge, enlarge or modify any substantive right." 28 U.S.C. Sec. 2072 (1982). We cannot find that a rule promulgated pursuant to this statute was intended impermissibly to abridge the Indian tribes' substantive right to immunity from suit. Nor can we read Rule 13(a) in isolation and extend federal jurisdiction despite the repeated specification that the rules are not intended to have such an effect.
 
 
 10
 Chemehuevi Indian Tribe, 757 F.2d at 1053.
 
 
 11
 Relying on Jicarilla Apache Tribe v. Andrus, 687 F.2d 1324 (10th Cir.1982), the trial court believed it also had jurisdiction based on the principle of "recoupment." Recoupment, however, is an equitable defense that applies only to suits for money damages. "[R]ecoupment is purely defensive and not offensive ... [and applies] only to the abatement, reduction, or mitigation of the damages claimed by plaintiff." 80 C.J.S. Set-Off and Counterclaim Sec. 2 (1953) (emphasis added).
 
 
 12
 The Potawatomis sought only injunctive relief in this suit. They did not ask for a declaratory judgment or damages. The Ninth Circuit has held that "[a]lthough a counterclaim may be asserted against a sovereign by way of set off or recoupment to defeat or diminish the sovereign's recovery, no affirmative relief may be given against a sovereign in the absence of consent." United States v. Agnew, 423 F.2d 513, 514 (9th Cir.1970). The judgment of the district court gave Oklahoma affirmative relief. Oklahoma obtained a declaratory judgment for part of the relief they sought in their counterclaim. This is contrary to the sovereign immunity doctrine and is an impermissible exercise of the trial court's jurisdiction under Schaumburg v. United States, 103 U.S. 667, 26 L.Ed. 599 (1881).
 
 
 13
 Because the Tribe is immune from suit, the district court lacked jurisdiction to adjudicate the counterclaim. We therefore reverse the trial court's denial of the Potawatomis' motion to dismiss Oklahoma's counterclaims and remand with directions to dismiss the counterclaims.
 
 II. Tribe's Request for Injunction
 
 14
 The Potawatomis sought an injunction that "[p]ermanently enjoins defendants, their officers, agents, servants, employees, attorneys, and all those in active concern or participation with them from entering plaintiff's Indian Country and from enforcing or attempting to enforce its regulatory and taxing authority to assess a cigarette tax against plaintiff, plaintiff's officers, agents or employees...." We conclude that the trial court erroneously denied the Potawatomis' request for injunction. The trial court correctly held that the phrase "Indian Country" refers to the territory over which an Indian tribe exercises its sovereign powers; it is "those lands which Congress intended to reserve for a tribe and over which Congress intended primary jurisdiction to rest in the federal and tribal governments." Indian Country, U.S.A., Inc. v. Oklahoma, 829 F.2d 967, 973 (10th Cir.1987), cert. denied, --- U.S. ----, 108 S.Ct. 2870, 101 L.Ed.2d 2906 (1988). The test is whether the land has "been validly set apart for the use of the Indians as such, under the superintendence of the Government." United States v. Pelican, 232 U.S. 442, 449, 34 S.Ct. 396, 399, 58 L.Ed. 676 (1914), quoted in United States v. McGowan, 302 U.S. 535, 539, 58 S.Ct. 286, 288, 82 L.Ed. 410 (1938), United States v. John, 437 U.S. 634, 649, 98 S.Ct. 2541, 2549, 57 L.Ed.2d 489 (1978), cert. denied, 441 U.S. 925, 99 S.Ct. 2036, 60 L.Ed.2d 399 (1979). The tribal convenience store is located on land which, during all relevant periods of time, was held in trust by the federal government for the Potawatomis. Congress specifically authorized the Tribe to convey this land, located within the original Potawatomi reservation boundaries, to the United States in trust. See Act of January 2, 1975, Pub.L. No., 93-591, 88 Stat.1922 (1975). "[L]ands held in trust by the United States for the Tribes are Indian Country within the meaning of Sec. 1151(a)." Cheyenne-Arapaho Tribe v. Oklahoma, 618 F.2d 665, 668 (10th Cir.1980). It has long been the law that land purchased in a state by the federal government and held in trust for Indians is "Indian Country." See United States v. McGowan, 302 U.S. 535, 538-39, 58 S.Ct. 286, 287-88, 82 L.Ed. 410 (1938). As set forth by the Supreme Court, section 1151 was intended to designate as Indian Country all lands set aside by whatever means for a tribe under federal protection together with trust and restricted Indian allotments. See United States v. John, 437 U.S. 634, 648-49, 98 S.Ct. 2541, 2548-49, 57 L.Ed.2d 489 (1978).
 
 
 15
 Oklahoma argues before us that (1) the convenience store land is not a "dependent Indian community," and (2) that the tribal convenience store is not located on an "Indian allotment." Neither the trial court nor the Tribe has ever asserted that the tribal convenience store was on an Indian allotment or a dependent Indian community.
 
 
 16
 Oklahoma contends, through a statistical analysis (based on Dawes Commission reports) that no "Indian Country" exists in Oklahoma. They argue that "the Tribe has not developed a living tribal community apart from the general community of the state and have in fact been assimilated into the general community of the state." This is irrelevant. The Tribe does not dispute that its members are citizens of Oklahoma or of other states and have been "assimilated" into society. This assimilation, however, does not justify the conclusion that the Tribe has no existence apart from the state or that the Tribe has been assimilated into the state. The Tribe exists apart from its individual members. Moreover, the fact that individual members of an Indian tribe have been "assimilated" or have become citizens does not change the status of the land held by the United States in trust for the Tribe. It does not transform the land from "Indian Country" to land totally subject to state jurisdiction. Mescalero Apache Tribe v. Jones, 411 U.S. 145, 93 S.Ct. 1267, 36 L.Ed.2d 114 (1973), is not contrary. In Mescalero, the land at issue was "located outside the boundaries of the Tribe's reservation" and was not owned by the Mescaleros but rather was "leased from the United States Forest Service for a term of 30 years". Mescalero, 411 U.S. at 146, 93 S.Ct. at 1269. Mescalero, therefore, is distinguishable from the case at hand; and the Court's holding that the Mescalero land was not "Indian Country" has no application to this case.
 
 
 17
 Because the convenience store is located in Indian Country, the Potawatomis possess sovereign powers with respect to the land and the store. See United States v. Wheeler, 435 U.S. 313, 323, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978). In Wheeler, the Court recognized that: "The sovereignty that the Indian tribes retain is of a unique and limited character. It exists only at the sufferance of Congress and is subject to complete defeasance. But until Congress acts, the tribes retain their existing sovereign powers." Id. at 323, 98 S.Ct. at 1086. Thus, because the convenience store is located on land over which the Potawatomis retain sovereign powers, Oklahoma has no authority to tax the store's transactions unless Oklahoma has received an independent jurisdictional grant of authority from Congress. See Bryan v. Itasca County, 426 U.S. 373, 376-77, 96 S.Ct. 2102, 2104-05, 48 L.Ed.2d 710 (1976); Moe v. Confederated Salish and Kootenai Tribes, 425 U.S. 463, 475-76, 96 S.Ct. 1634, 1642-43, 48 L.Ed.2d 96 (1976); McClanahan v. Arizona Tax Comm'n, 411 U.S. 164, 175-77, 93 S.Ct. 1257, 1263-64, 36 L.Ed.2d 129 (1973); United States v. Barquin, 799 F.2d 619, 621 (10th Cir.1986). Oklahoma cites no federal law granting such jurisdiction. Moreover, Oklahoma disclaimed jurisdiction over Indian lands upon entering the Union, did not assert jurisdiction under Public Law 280, and can point to no voluntary grant of jurisdiction by the Tribe. Oklahoma's lack of jurisdiction points out the critical distinction between this case and the cases on which Oklahoma relies. For example, Oklahoma relies on Washington v. Confederated Tribes of Colville, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980), for the proposition that Indian retailers are subject to state taxation--at least with respect to sales made to tribal nonmembers. In Colville, however, the Indian tribe had opted to come under state jurisdiction pursuant to Pub.L. No. 83-280, 67 Stat. 588 (1953) and Wash.Rev.Code Sec. 37.12.010 (1957). See Confederated Tribes of Colville v. Washington, 446 F.Supp. 1339, 1348-49 (E.D.Wash.1978), rev'd, 447 U.S. 134, 100 S.Ct. 2069, 65 L.Ed.2d 10 (1980). Because no such jurisdiction exists in this case, Oklahoma's reliance on Colville is misplaced.
 
 
 18
 We conclude that the district court improperly denied the Potawatomis' request to enjoin Oklahoma from collecting state sales tax on the Potawatomis' sales of cigarettes. Accordingly, we remand to the district court for a reinstatement of a permanent injunction on behalf of the Potawatomis.
 
 III. Costs
 
 19
 This is a federal action. Unless otherwise provided, costs shall be awarded as a matter of course. Fed.R.Civ.P. 54(d) provides:
 
 
 20
 (d) Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.
 
 
 21
 Contrary to Oklahoma's assertion, Oklahoma can be held liable for costs. See, e.g., State ex rel. Grigsby v. Silvers, 198 Okl. 526, 180 P.2d 657 (Okla.1947).
 
 
 22
 REVERSED and REMANDED for dismissal of Oklahoma's counterclaim and entry of an injunction as prayed for by the Potawatomis.
 
 
 23
 We also REMAND for consideration of the Potawatomis' motion for costs.