Justice STEVENS,
with whom Justice THOMAS and Justice GINSBURG join, dissenting.
“Absent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to nondiscriminatory state law otherwise applicable to all citizens of the State.” Mes-ealero Apache Tribe v. Jones, 411 U.S. 145, 148-149, 93 S.Ct. 1267, 1270, 36 L.Ed.2d 114 (1973). There is no federal statute or treaty that provides petitioner, the Kiowa Tribe of Oklahoma, any immunity from the application of Oklahoma law to its off-reservation commercial activities. Nor, in my opinion, should this Court extend the judge-made *1706 doctrine of sovereign immunity to pre-empt the authority of the state courts to decide for themselves whether to accord such immunity to Indian tribes as a matter of comity.
I
“The doctrine of sovereign immunity is an amalgam of two quite different concepts, one applicable to suits in the sovereign’s own courts and the other to suits in the courts of another sovereign." Nevada v. Hall, 440 U.S. 410, 414, 99 S.Ct. 1182, 1185, 59 L.Ed.2d 416 (1979). In the former category, the sovereign’s power to determine the jurisdiction of its own courts and to define the substantive legal rights of its citizens adequately explains the lesser authority to define its own immunity. Kawananakoa v. Polyblank, 205 U.S. 349, 353, 27 S.Ct. 526, 527, 51 L.Ed. 834 (1907). The sovereign’s claim to immunity in the courts of a second sovereign, 176ihowever, normally depends on the second sovereign’s law. Schooner Exchange v. McFaddon, 7 Crunch 116, 136, 3 L.Ed. 287 (1812). An Indian tribe’s assertion of immunity in a state judicial proceeding is unique because it implicates the law of three different sovereigns: the tribe itself, the State, and the Federal Government.
As the Court correctly observes, the doctrine of tribal immunity from judicial jurisdiction “developed almost by accident.” Ante, at 1703. Its origin is attributed to two federal cases involving three of the Five Civilized Tribes. The former case, Turner v. United States, 248 U.S. 354, 39 S.Ct. 109, 63 L.Ed. 291 (1919), rejected a claim against the Creek Nation, whose tribal government had been dissolved. The Court explains why that case provides no more than “a slender reed” of support for the doctrine even in federal court. Ante, at 1704. In the latter case, United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940) (USF & G), the Federal Government sought to recover royalties due under coal leases that the United States had executed on behalf of the Choctaw and Chickasaw Nations. The Court held that the Government’s action was not haired by a prior judgment against it entered by a different federal court. The holding that the prior judgment was “void in so far as it undertakes to fix a credit against the Indian Nations,” id., at 512, 60 S.Ct, at 656, rested on two grounds. First, in a companion case decided that day,[1] the Court ruled that “cross-claims against the United States are justiciable only in those courts where Congress has consented to their consideration,” ibid,.; but no statute had authorized the prior adjudication of the cross-claim against the Federal Government. The second ground was the statement, supported by a citation of Turner and two Eighth Circuit decisions addressing the immunity of two of the Five Civilized Tribes, that u[t]hese Indian Nations are exempt from suit without Congressional authorization.” 309 U.S., 762 at 512, 60 S.Ct., at 656 (emphasis added). At most, the holding extends only to federal cases in which the United States is litigating on behalf of a tribe. Moreover, both Turner and USF & G arose out of conduct that occurred on Indian reservations.
In subsequent cases, we have made it clear that the States have legislative jurisdiction over the off-reservation conduct of Indian tribes, and even over some on-reservation activities.[2] Thus, in litigation that consumed more than a decade and included three decisions by this Court, we rejected a Tribe’s claim that the doctrine of sovereign immunity precluded the State of Washington from regulating fishing activities on the Puyallup Reservation. Puyallup Tribe, Inc. v. Department of Game of Wash., 433 U.S. 165, 175-176, 97 S.Ct. 2616, 2622-2623, 53 L.Ed.2d 667 (1977). It is true that as an incident to that important holding, we vacated the portions of the state-court decree that were directed *1707 against the Tribe itself. Id., at 172-173, 97 S.Ct., at 2621-2622. That action, however, had little practical effect because we upheld the portions of the decree granting relief against the entire class of Indians that was represented by the Tribe. Although Justice Blackmun, one of the “strongest supporters of Indian rights on the Court,”[3] wrote separately to express his “doubts ... about the continuing vitality in this day of the doctrine of tribal immunity as it was enunciated in United States v. United States Fidelity & Guaranty Co.,” id., at 178, 97 S.Ct., at 2624, our opinion did not purport to extend or to explain the doctrine. Moreover, as the Tribe’s predominant argument was that “the state courts of Washington are without 176aiurisdiction to regulate fishing activities on its reservation,” id., at 167, 97 S.Ct., at 2618-2619, we had no occasion to consider the validity of an injunction relating solely to off-reservation fishing.
In several cases since Puyallup, we have broadly referred to the tribes’ immunity from suit, but “with little analysis,” ante, at 1704, and only considering controversies arising on reservation territory. In Santa Clara Pueblo v. Martinez, 436 U.S. 49, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978), a Tribe member and her daughter who both lived on the Santa Clara Pueblo reservation sued in federal court to challenge the validity of a tribal membership law. We agreed with the Tribe that the court lacked jurisdiction to decide this “intra-tribal controversfy] affecting matters of tribal self-government and sovereignty.” Id., at 53, 98 S.Ct., at 1674. Our decision in Three Affiliated Tribes of Fort Berthold Reservation v. Wold, Engineering, 476 U.S. 877, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986), held that North Dakota could not require a Tribe’s blanket waiver of sovereign immunity as a condition for permitting the Tribe to sue private parties in state court. That condition was “unduly intrusive on the Tribe’s common law sovereign immunity, and thus on its ability to govern itself according to its own laws,” because it required “that the Tribe open itself up to the coercive jurisdiction of state courts for all matters occurring on the reservation.” Id., at 891, 106 S.Ct., at 2813.[4] Most recently, we held that a federal court lacked authority to entertain Oklahoma’s claims for unpaid taxes on cigarette sales made on tribal trust land, which is treated the same as reservation territory. Oklahoma Tax Comm’n v. Citizen Band Potawatomi Tribe of Ohio,, 498 U.S. 505, 509-511, 111 S.Ct. 905, 909-910, 112 L.Ed.2d 1112 (1991).[5]
704⅛ sum, we have treated the doctrine of sovereign immunity from judicial jurisdiction as settled law, but in none of our cases have we applied the doctrine to purely off-reservation conduct. Despite the broad language used in prior cases, it is quite wrong for the Court to suggest that it is merely following precedent, for we have simply never considered whether a tribe is immune from a suit that has no meaningful nexus to the tribe’s land or its sovereign functions. Moreover, none of our opinions has attempted to set forth any reasoned explanation for a distinction between the States’ power to regulate the off-reservation conduct of Indian tribes and the States’ power to adjudicate disputes arising out of such off-reservation conduct. Accordingly, while I agree with the Court that it is now too late to repudiate the doctrine entirely, for the following reasons I would not extend the doctrine beyond its present contours.
*1708 II
Three compelling reasons favor the exercise of judicial restraint.
First, the law-making power that the Court has assumed belongs in the first instance to Congress. The fact that Congress may nullify or modify the Court’s grant of virtually unlimited tribal immunity does not justify the Court’s performance of a legislative function. The Court is not merely announcing a rule of comity for federal judges to observe; it is announcing a rule that preempts state power. The reasons that under-gird our strong presumption against construing federal statutes to pre-empt state law, see, e.g., Cipollane v. Liggett Group, Inc., 505 U.S. 504, 516, 518, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992), apply with added force to judge-made rales.
In the absence of any congressional statute or treaty defining the Indian tribes’ sovereign immunity, the creation of 176Sa federal common-law “default” rule of immunity might in theory be justified by federal interests. By setting such a rule, however, the Court is not deferring to Congress or exercising “caution,” ante, at 1705—rather, it is creating law. The Court fails to identify federal interests supporting its extension of sovereign immunity—indeed, it all but concedes that the present doctrine lacks such justification, ante, at 1704—and completely ignores the State’s interests. Its opinion is thus a far cry from the “comprehensive preemption inquiry in the Indian law context” described in Three Affiliated Tribes that calls for the examination of “not only the congressional plan, but also the nature of the state, federal, and tribal interests at stake 476 U.S., at 884, 106 S.Ct., at 2310 (quoting White Mountain Apache Tribe v. Bracker, 448 U.S. 136, 145, 100 S.Ct. 2578, 2584-2585, 65 L.Ed.2d 665 (1980)). Stronger reasons are needed to fill the gap left by Congress.
Second, the rule is strikingly anomalous. Why should an Indian tribe enjoy broader immunity than the States, the Federal Government, and foreign nations? As a matter of national policy, the United States has waived its immunity from tort liability and from liability arising out of its commercial activities. See 28 U.S.C. §§ 1346(b), 2674 (Federal Tort Claims Act); §§ 1346(a)(2), 1491 (Tucker Act). Congress has also decided in the Foreign Sovereign Immunities Act of 1976 that foreign states may be sued in the federal and state courts for claims based upon commercial activities carried on in the United States, or such activities elsewhere that have a “direct effect in the United States.” § 1605(a)(2). And a State may be sued in the courts of another State. Nevada v. Hall, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). The fact that the States surrendered aspects of their sovereignty when they joined the Union does not even arguably present a legitimate basis for concluding that the Indian tribes retained—or, indeed, ever had—any sovereign immunity for off-reservation commercial conduct.
176C,Third, the rule is unjust. This is especially so with respect to tort victims who have no opportunity to negotiate for a waiver of sovereign immunity; yet nothing in the Court’s reasoning limits the rule to lawsuits arising out of voluntary contractual relationships. Governments, like individuals, should pay their debts and should be held accountable for their unlawful, injurious conduct.
I respectfully dissent.

. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940).

. "The general notion drawn from Chief Justice Marshall’s opinion in Worcester v. Georgia, 6 Pet. 515, 561, 8 L.Ed. 483; The Kansas Indians, 5 Wall. 737, 755-757, 18 L.Ed. 667; and The New York Indians, 5 Wall. 761, 18 L.Ed. 708, that an Indian reservation is a distinct nation within whose boundaries state law cannot penetrate, has yielded to closer analysis when confronted, in the course of subsequent developments, with diverse concrete situations.” Organized Village of Kake v. Egan, 369 U.S. 60, 72, 82 S.Ct. 562, 569, 7 L.Ed.2d 573 (1962).

. Dussias, Heeding the Demands of Justice: Justice Blackmun’s Indian Law Opinions, 71 N.D.L.Rev. 41, 43 (1995).

. The particular counterclaims asserted by the private party, which we assumed would be barred by sovereign immunity, concerned the construction of a water-supply system on the Tribe’s reservation. Three Affiliated Tribes, 476 U.S., at 881, 106 S.Ct., at 2308.

. The Court cites Blatchford v. Native Village of Noatak, 501 U.S. 775, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), and Idaho v. Coeur d’Alene Tribe of Idaho, 521 U.S. 261, 117 S.Ct. 2028, 138 L.Ed.2d 438 (1997), as having "retained the doctrine” of tribal sovereign immunity. Ante, at 1704. Each of those cases upheld a State’s sovereign immunity under the Eleventh Amendment from being sued in federal court by an Indian tribe. The passing references to tribes’ immunity from suit did not discuss the scope of that immunity and were, of course, dicta.