**CITY OF BURBANK, CALIFORNIA,**
**Plaintiff–Appellant,**

v.

**UNITED STATES, Defendant–Appellee.**

**No. 01–5004.**

United States Court of Appeals,
Federal Circuit.

DECIDED: Dec. 17, 2001.

John P. Williams, Duncan & Allen, of Washington, DC, argued for plaintiff-appellant. With him on the brief was Jon R. Stickman.

Richard P. Nockett, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC. With him on the brief were Stuart E. Schiffer, Acting Assistant Attorney General; David M. Cohen, Director; and John W. Showalter, Assistant Director. Of counsel on the brief were Randy A. Roach, Acting General Counsel; Marybeth Van Buren, Assistant General Counsel; and Lara L. Skidmore, Attorney, Office of the General Counsel, Bonneville Power Administration, Department of Energy, of Portland, OR.

Before LOURIE, Circuit Judge, ARCHER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

GAJARSA, Circuit Judge.

The Plaintiff–Appellant, the City of Burbank, California ("Burbank"), seeks review of the final decision by the U.S. Court of Federal Claims ("Court of Federal Claims" or "trial court") dismissing Burbank's complaint for lack of subject matter jurisdiction. Burbank filed suit against the United States, acting by and through the Bonneville Power Administration ("BPA" or "Bonneville"), in the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), alleging two counts of breach of contract. The trial court dismissed both counts, holding that they fall within the exclusive jurisdiction of the U.S. Court of Appeals for the Ninth Circuit ("Ninth Circuit"), pursuant to 16 U.S.C. § 839f(e)(5). *City of Burbank v. United States*, 47 Fed. Cl. 261 (2000). In the alternative, the trial court held that if it did have jurisdiction, it dismissed Burbank's claims without prejudice for failing to satisfy the procedural requirements of the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* ("CDA").

Burbank appeals only that portion of the trial court's decision dismissing both counts for lack of jurisdiction. It does not appeal the alternative holding dismissing its claims without prejudice for failure to comply with the CDA. We hold that both counts relate to alleged breaches of contract based on facts outside of an administrative record and therefore fall within the Court of Federal Claims' Tucker Act jurisdiction, 28 U.S.C. § 1491(a)(1), rather than within the exclusive jurisdiction of the Ninth Circuit under § 839f(e). Accordingly, we reverse the trial court's dismissal and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. *The Parties*

The City of Burbank is a municipal corporation organized and existing under the Constitution and laws of California. It operates a municipal electric system, which involves generating, transmitting, and distributing electric energy within its jurisdiction in California.

The BPA is a power-marketing, federal administration organized and existing under the Bonneville Project Act, 16 U.S.C §§ 832–832l, and Sections 302(a)(1)(D) and

302(a)(2) of the Department of Energy Organization Act, 42 U.S.C. § 7152(a)(1)(D). The BPA markets, transmits, purchases, exchanges, and sells electric energy in the wholesale market. Federal dams in the Pacific Northwest[1] generate the hydroelectric energy the BPA sells in this market. Four statutes primarily govern the BPA.[2] At issue in this case is the scope of the jurisdictional grant contained in the Pacific Northwest Electric Power Planning and Conservation Act of 1980, 16 U.S.C. §§ 839–839h, which is commonly called the "Northwest Power Act" (or the "Regional Act").

▆ Congress created the BPA primarily to serve the Pacific Northwest. *See* 16 U.S.C. §§ 832–832m (2000). Whenever the BPA generates sufficient electric energy to satisfy the demand of its primary service area, any electric energy above this amount is defined as surplus. 16 U.S.C. § 837(c) (2000) (defining "surplus energy" as electric energy that would otherwise be wasted due to lack of a market in the Pacific Northwest). The BPA may sell such surplus electric energy outside of the Pacific Northwest. It must do so, however, pursuant to the authorization and restrictions codified at 16 U.S.C. §§ 837a, and 839c(f). Thus, when the BPA agrees to sell electric energy to an entity outside the Pacific Northwest, such as Burbank, some of the contractual provisions are mandated by statute. The BPA freely negotiates other provisions, which are not mandated by statute.

## B. *The Contract At Issue*

Burbank and the BPA executed the contract at issue on January 28, 1988 (the "Contract").[3] It has a term of twenty years. The Contract initially provided for the sale and exchange of 18 megawatts of electric energy per contract year by the BPA to Burbank. On July 6, 1988, the parties executed an Amendatory Agreement that increased the amount of electric energy to be sold or exchanged to 40 megawatts.

At any given time the Contract operates in one of two different, and distinct, modes: the power sale mode or the exchange mode. The Contract initially operated in power sale mode.

### 1. *Power Sale Mode Versus Exchange Mode*

The Contract operates in the power sale mode when the BPA determines that it is capable of producing surplus electric energy. In the power sale mode, the BPA sells firm amounts of electric energy, which Burbank must purchase at rates governed by Section 9(a) of the Contract. Sections 9(a)(1) and 9(a)(2) specify the rates payable in 1988 and 1989–1992, respectively. Section 9(a)(3) of the Contract determines the rates payable by Burbank beginning on January 1, 1993. These contract rates are determined by applying the adjustment ratio provided in Section 9(a)(3) to the previously applicable Contract rate on the effective date of any firm power rate

---

1. The Pacific Northwest includes Washington, Oregon, Idaho, the part of Montana west of the Continental Divide, and those parts of Utah, Wyoming, and Nevada within the Columbia River drainage. 16 U.S.C. § 839a(14) (2000); *Kaiser Aluminum & Chem. Corp. v. Bonneville Power Admin.*, 261 F.3d 843, 846 (9th Cir.2001).

2. These statutes are: the Bonneville Project Act of 1937, 16 U.S.C. §§ 832–832m (2000) ("Project Act"); the Pacific Northwest Con-

sumer Power Preference Act of 1964, 16 U.S.C. §§ 837–837h (2000) ("Preference Act"); the Pacific Northwest Federal Transmission System Act of 1974, 16 U.S.C. §§ 838–838l (2000) ("Transmission Act"); and the "Northwest Power Act," *infra*.

3. To avoid confusion, reference to clauses of the Contract shall be referred to as "Section" whereas references to statutory clauses shall be referred to using the section symbol, " § ."

adjustment by the BPA. The adjustment ratio is calculated with respect to the rates the BPA charges in the Pacific Northwest, which are established by an administrative proceeding pursuant to 16 U.S.C. § 839e(i).

If the BPA lacks surplus electric energy, the Contract converts to the exchange mode. The terms and conditions of this conversion are mandated by statute. *See* 16 U.S.C. § 837b(a) (2000) (Any contract for the sale of electric energy outside the Pacific Northwest will provide that, after notice, the Secretary "will not deliver electric energy under such contract whenever it can reasonably be foreseen that such delivery would impair his ability to meet ... the energy requirements of any Pacific Northwest Customer.").

Upon conversion to exchange mode, the BPA provides Burbank with the capacity to generate electric energy at some times. In exchange, Burbank must deliver electric energy to the BPA at other times.

### 2. *The Allegedly Breached Contract Provisions*

Section 6(c) of the Contract becomes applicable when the BPA has converted the Contract into the exchange mode. Section 6(c) authorizes the BPA to cause reversion from the exchange mode back to the power sale mode if the BPA determines that it has sufficient surplus electric energy for the ensuing Contract Year. This reversion back provision is not statutorily mandated. It reads:

> After conversion to the Exchange, whenever Bonneville determines that it has sufficient surplus firm energy to deliver the amounts of surplus firm power specified in subsections 5(a) and 5(b) for the ensuing Contract Year, deliveries under this Agreement shall revert to the surplus firm power sale pursuant to Section 5, *unless Burbank has provided written notice to Bonneville which describes a*

> *contract offer to acquire a resource to replace the energy no longer available from Bonneville due to the conversion to the Exchange.* · Such notice shall include the amount of energy to be acquired and the term of the proposed acquisition. *Bonneville shall respond as follows:*
>
> *Bonneville shall, within 21 days of receipt of such notice, notify Burbank whether this transaction shall revert to the power sale for the duration of Burbank's proposed energy acquisition.... If Bonneville elects not to have the transaction revert to the power sale, then Bonneville shall waive its right to revert to the power sale for the duration of Burbank's contractual commitment for the proposed energy acquisition.*

(emphasis added).

### 3. *The Complaint in the Court of Federal Claims*

Burbank initiated this action in the Court of Federal Claims, alleging two counts of breach of the Contract. Count one of the Complaint alleges that the BPA breached its implied duty of good faith and fair dealing under the Contract by failing to comply with the notice requirements of Section 6(c). Specifically, Burbank alleges that in April 1992, the Contract was operating in exchange mode. Burbank notified the BPA, via letter dated April 13, 1992, that it had obtained an agreement with the Montana Power Company to replace the energy no longer available from the BPA for the period from July 1, 1992, to June 30, 1993.

Burbank contends that the BPA's response breached Section 6(c). Rather than notifying Burbank of its election to revert to the power sale mode within the twenty-one day period, Burbank alleges, the BPA took thirty-seven days to reply. Burbank states that on May 20, 1992, the BPA sent a letter stating that it was pro-

viding notice of reversion to the power sale mode under Sections 6(d) and 6(a)(2) of the Contract [4] rather than responding in accordance with Section 6(c). Burbank alleges that in response to the BPA's untimely decision to revert to the power sale mode, Burbank terminated its contract with the Montana Power Company, and was subsequently damaged when the BPA failed to maintain the transaction in the power sale mode for the term during which Burbank's contract with the Montana Power Company would have run. Thus, Burbank concludes, as a result of the BPA's breach of Section 6(c), Burbank incurred higher costs than it would have incurred had it proceeded with its Montana Power Company contract.

Count two of Burbank's complaint alleges that the BPA materially breached Section 9(a)(3) of the Contract. Section 9(a)(3) supplies the mechanism for determining the rates payable by Burbank for energy and generating capacity delivered after 1992. Section 9(a)(3) provides for the adjustment of Burbank's rates on the effective date of any Bonneville Priority Firm Power (PF) rate adjustment, as a function of the ratio of '$PF_{new}$' to '$PF_{prev}$'. Thus, the new rate charged to Burbank after any rate adjustment is equal to the previously applicable rate multiplied by the ratio $PF_{new}$ over $PF_{prev}$.

The alleged breach of Section 9(a)(3) is predicated on a dispute over how the terms "$PF_{new}$" and "$PF_{prev}$" are defined. Section 9(a)(3) provides that if there is more than one applicable new or previous PF rate, "the average shall be determined by a weighting based on forecasted sales under such PF rates." On October 1, 1996, the BPA adjusted the PF rates in general, and changed the rate structure such that charges that were formerly "bundled" into the same rate were calculated pursuant to different rate schedules. This general rate adjustment triggered an adjustment in the rates Burbank was obligated to pay under the contract. Burbank contends that the BPA improperly adjusted Burbank's rates because it calculated the "average $PF_{new}$ rate" for the 1996 adjustment of Burbank's rates by treating the 1996 PF rates as if they were bundled, meaning that the BPA averaged all of the unbundled rates, rather than determining which of the 1996 PF rates are of the same class, quality, and type as the type provided in the BPA's contract with Burbank and including only those rates in the calculation.

### C. The Court of Federal Claims' Determination

In response to Burbank's complaint, the BPA moved to dismiss for lack of jurisdiction on the grounds that Burbank's claim was subject to the Contract Disputes Act ("CDA") and that Burbank failed to meet the CDA's jurisdictional prerequisites. In the alternative, the BPA argued, Burbank failed to bring its claim within the otherwise applicable six-year statute of limitations. The trial court, *sua sponte,* raised the jurisdictional issue now before this Court on appeal: whether the statutory grant of exclusive jurisdiction to the Ninth Circuit in § 839f(e) precluded the exercise of Tucker Act jurisdiction by the Court of Federal Claims. *See* 16 U.S.C. § 839f(e) (2000).

After considering supplemental briefs in which the parties argued that both counts properly were brought before the Court of Federal Claims, the trial court dismissed for lack of jurisdiction. It held that both counts fall within the exclusive jurisdiction

---

4. Sections 6(d) and 6(a)(2) provide that if the BPA determines that there is a certainty of surplus firm energy for the next Contract Year, it will notify Burbank as soon as possible (not later than June 15) of the reversion to power sale mode.

of the Ninth Circuit to review final agency decisions made by the BPA: "[l]ooking to the substance of plaintiff's claims, both involve defendant's administrative decisions made in the execution of a BPA final action, namely the sale of electric power outside the Pacific Northwest." *City of Burbank v. United States,* 47 Fed.Cl. 261, 267 (2000).

■ The trial court reasoned that 16 U.S.C. § 839f(e) carves out an exception to jurisdiction it would otherwise possess under the Tucker Act. Pursuant to 16 U.S.C. § 839f(e)(5), the Ninth Circuit has exclusive jurisdiction to review final agency actions taken by the BPA. *City of Burbank,* 47 Fed.Cl. at 266 (citing *Pac. Power & Light Co. v. Bonneville Power Admin.,* 795 F.2d 810, 814 (9th Cir.1986)). The trial court noted that extraregional sales constitute final actions under § 839f(e)(1), but did not hold that § 839f(e)(1) vested the Ninth Circuit with exclusive jurisdiction over Burbank's claims. *Id.* (citing *Puget Sound Power & Light Co. v. United States,* 23 Cl.Ct. 46, 55, *appeal dismissed without op.,* 944 F.2d 912 (Fed.Cir.1991)).

Rather than premising its holding on § 839f(e)(1), the trial court concluded that the appropriate jurisdictional test is as follows:

> The appropriate test is therefore to determine whether a claim is challenging either BPA action 'taken pursuant to statutory authority,' or action that constitutes 'contractual commitments' made outside the statutory *requirements* of the Regional Act.... Only when claims are found to be based on actions *wholly outside the statutory authority* of the Regional Act will the Ninth Circuit's exclusive jurisdiction fail to encompass such claims.

*Id.* at 266–67 (citing *Public Util. Dist. No. 1 of Clark County v. Johnson,* 855 F.2d 647, 650 (9th Cir.1988)) (emphasis added). Thus, the trial court explained, a party's characterization of its claim as contractual is insufficient. Rather, "the court must determine whether the contractual provisions themselves were included pursuant to statutory *authority* and mandate." *Id.* at 267 (emphasis added).

Under this test, the Court of Federal Claims concluded that it lacked jurisdiction over both counts. It characterized Count one, the alleged breach of Section 6(c) of the Contract, as a challenge to the BPA's decision to re-convert the Contract to exchange mode after Burbank had cancelled its contract with the Montana Power Company. In the trial court's determination, Burbank's complaint had little to do with breach of contract by deficient notice. Although Burbank styled Count one as an alleged breach due to deficient notice, the trial court reasoned that the crux of Burbank's complaint was that the BPA re-converted the contract to exchange mode, and that this conversion occurred pursuant to statutory mandate, and after the allegedly deficient notice. *Id.* at 268 ("Plaintiff bases its breach of contract claim on this untimely reply, but its challenge does not rest with the late response to its proposed acquisition. Instead, plaintiff opposes defendant's decision to revert the Contract to the power sale mode on May 20, 1992, followed by defendant's need to convert the Contract to the exchange mode again...."). Thus, the trial court concluded that Count one challenges agency action taken pursuant to statutory authority, and therefore that it lies within the Ninth Circuit's exclusive jurisdiction. *Id.*

The Court of Federal Claims also concluded that the Ninth Circuit had exclusive jurisdiction over the breach of Section 9(a)(3) alleged in Count two. It characterized Count two as a challenge solely to the misapplication of rates, and noted that challenges to the rates the BPA charges for electric energy "have uniformly been

held to fall under the Ninth Circuit's jurisdiction." *Id.* at 267. It reasoned that Burbank's contention "that the BPA misapplied rates concerns an action that is illustrated in and mandated by the Regional Act." *Id.* at 268. The trial court concluded that the contractual provisions concerning the application of rates are based directly on statutory requirements, and that therefore the alleged misapplication constituted a final action subject to the Ninth Circuit's exclusive jurisdiction. *Id.*

The Court of Federal Claims also held that, in the alternative, if it did possess jurisdiction over Burbank's claims, Burbank nevertheless had failed to comply with the requirements of the Contract Disputes Act, 41 U.S.C. § 605. *Id.* at 268–72. Accordingly, the trial court issued an alternative holding dismissing Burbank's claims without prejudice, allowing Burbank to bring them in accordance with the requirements of the Contract Disputes Act. *Id.* at 272.

On appeal, Burbank argues that both counts properly fall within the Court of Federal Claims' Tucker Act jurisdiction because they allege breaches of contractual commitments into which the BPA entered independently of final agency action taken pursuant to statutory mandate or the initiation of administrative proceedings. Initially, the BPA agreed with Burbank that the Court of Federal Claims possesses jurisdiction over both counts. On appeal, however, the BPA has reversed its position on Count two. Although it continues to agree with Burbank that the trial court erred in its characterization and consequent disposition of Count one, the BPA now argues that Count two falls within the exclusive jurisdiction of the Ninth Circuit. It reasons that Count two challenges a final action or the implementation thereof, and thus falls squarely within the jurisdictional grant of § 839f(e)(5). The BPA argues that Count two challenges a

final action because the price Burbank pays is a rate, and thus, by making the disputed adjustment, the BPA engaged in a final action (albeit one not specifically enumerated in § 839f(e)(1)). In the alternative, the BPA argues that Count two challenges the implementation of a final action: the BPA's determination of the 1996 PF rates, which serve as the basis for the contractual adjustment. Burbank appealed the trial court's judgment to this Court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## II. STANDARD OF REVIEW

■ Whether the Court of Federal Claims properly granted a motion to dismiss for lack of subject matter jurisdiction is a question of law subject to *de novo* review. *Hanlin v. United States,* 214 F.3d 1319, 1321 (Fed.Cir.2000).

## III. DISCUSSION

■ The Tucker Act vests the Court of Federal Claims with jurisdiction over this government contract dispute unless a specific jurisdictional statute grants jurisdiction to another court. *See* 28 U.S.C. § 1491(a)(1) (1994) (The Court of Federal Claims shall have jurisdiction over claims against the United States founded upon "any express or implied contract with the United States."); *see also* 28 U.S.C. § 1346(a)(2) (1994) (vesting district courts with concurrent jurisdiction over government contract disputes not exceeding $10,000). Consequently, the trial court's dismissal of each count was improper unless § 839f(e)(5) places it under the exclusive jurisdiction of the Ninth Circuit.

To determine the appropriate jurisdiction we begin, as we must, by describing the statutory scheme. Section 839f(e)(1) lists eight actions that "shall be final actions subject to judicial review." 16 U.S.C. § 839f(e)(1) (2000). Extra-regional sales

of electric energy by the BPA constitute one of these eight express final actions. *See* 16 U.S.C. § 839f(e)(1)(B) (2000) (designating sales, exchanges, and purchases under § 839c as final actions); 16 U .S.C. § 839c(f) (2000) (authorizing the sale of electric energy, including sales outside the Pacific Northwest as authorized in § 837a).

■ As the trial court implicitly recognized, however, § 839f(e)(1) fails to vest the Ninth Circuit with exclusive jurisdiction over Burbank's claims. This is so for two reasons. First, although § 839f(e)(1) designates extra-regional power sales contracts as "final actions subject to judicial review," that section fails to specify the court in which the judicial review is to occur. It is only § 839f(e)(5) that vests jurisdiction over challenges to "final agency actions and decisions taken pursuant to this chapter" exclusively in the Ninth Circuit. 16 U.S.C. § 839f(e)(5) (2000). Second, § 839f(e)(2) limits review of the final actions articulated in § 839f(e)(1) to the administrative record compiled in accordance with the Administrative Procedure Act ("APA"). *See* 16 U.S.C. § 839f(e)(2) (2000) (limiting the record upon review of "such final actions" to "the administrative record compiled in accordance with this chapter"); *see also* 16 U.S.C. § 839e(i) (2000) (requiring the BPA to follow notice-and-comment procedures in establishing rates). Moreover, § 839f(e)(1) states that the eight expressly listed actions are final actions "[f]or purposes of sections 701 through 706 of Title 5." 16 U.S.C. § 839f(e)(1) (2000). Thus, Burbank's claims fall outside the express jurisdictional grant of § 839f(e)(1) because they allege that the BPA breached a contract into which it entered without following APA procedures, and, consequently, without generating an administrative record.

■ That Burbank's challenge is not to one of the final actions expressly subject to judicial review under § 839f(e)(1), howev-

er, does not end the inquiry. § 839f(e)(3) provides that "[n]othing in this section," including the express list contained in § 839f(e)(1), "shall be construed to preclude judicial review of other final actions and decisions" undertaken by the BPA. 16 U.S.C. § 839f(e)(3) (2000). § 839f(e)(3) underscores what is made plain by reading the express list of final actions in § 839f(e)(1): the list is illustrative, not exhaustive.

■ Consequently, if either of Burbank's counts challenges a final agency action within the meaning of § 839f(e)(5), jurisdiction to review that count lies exclusively in the Ninth Circuit notwithstanding the failure of § 839f(e)(1) to confer such jurisdiction. We turn now to the text of § 839f(e)(5). In pertinent part, it states:

> Suits to challenge the constitutionality of this chapter, or any action thereunder, *final actions and decisions taken pursuant to this chapter* by the Administrator or the Council, *or the implementation of such final actions,* whether brought pursuant to this chapter, the Bonneville Project Act [16 U.S.C. § 832 *et seq.*], the Act of August 31, 1964 (16 U.S.C. § 837 837h), or the Federal Columbia River Transmission System Act (16 U.S.C. § 838 and following), shall be filed in the United States court of appeals for the region.... Suits challenging any other actions under this chapter shall be filed in the appropriate court.

16 U.S.C. § 839f(e)(5) (2000) (emphasis added).

We hold that Burbank's counts challenge neither a "final action[ ] or decision[ ] taken pursuant to this chapter," nor "the implementation thereof." Alone, this language might plausibly be read to encompass challenges involving any power sales contract to which the BPA is a party; final actions might be considered "taken pursuant to this chapter" simply by virtue

of the fact that the relevant chapter, the Northwest Power Act, *authorized* the BPA to take them. In the statutory context, however, such a broad interpretation of the meaning of final actions "taken pursuant to this chapter" is improper for two reasons.

First, interpreting "pursuant to this chapter" to include alleged breaches of any power sales contract the Northwest Power Act authorizes the BPA to execute would impermissibly render meaningless the limitation that § 839f(e)(2) places on the express list of final actions in § 839f(e)(1). Although the list of final actions in § 839f(e)(1) is not exhaustive, neither is it irrelevant. It would be improper to expand the interpretation of final actions subject to Ninth Circuit review so far as to undercut the express limitations Congress placed on the enumerated list of final actions. But this is precisely what would occur were we to interpret "final actions and decisions taken pursuant to this chapter" to include the sale and exchange of electric energy despite the absence of an administrative record. This is so because §§ 839f(e)(1) and 839f(e)(2) limit Ninth Circuit jurisdiction over such sales and exchanges to those instances in which an "administrative record [is] compiled in accordance with this chapter." 16 U.S.C. § 839f(e)(2) (2000).

Second, interpreting "pursuant to this chapter" to include all power sales contracts the Northwest Power Act authorizes the BPA to enter would render meaningless other language in § 839f(e)(5). Such an interpretation would read out the language indicating that jurisdiction over "suits challenging *other actions under this chapter*" rests with other appropriate courts. 16 U.S.C. § 839f(e)(5) (2000) (emphasis added); *see also City of Seattle v. Johnson*, 813 F.2d 1364, 1367 (9th Cir. 1987) (holding that a "final action" exists when a BPA decision is subject to no

further administrative review by the BPA or Federal Energy Regulatory Commission, and can proceed to judicial review). "Pursuant to this chapter" cannot encompass all BPA actions that are not *ultra vires*, because such an interpretation would leave nothing to be "under this chapter." "*Under* this chapter" plainly includes actions that the chapter authorizes. *Cf.* XVIII *The Oxford English Dictionary* 950 (2d ed.1989) (noting that "under" denotes authorization, and defining it as "[in] accordance with (some regulative power or principle).") Just as plainly, "under this chapter" excludes actions that are *ultra vires*, for those necessarily fall outside of the scope of the chapter, not under it. Thus, in order to preserve the meaning of both the "pursuant to this chapter," and the "under this chapter" clauses of § 839f(e)(5), actions taken "pursuant to" the Northwest Power Act require something more than mere authorization.

 We decline to render this language superfluous. *See Meeks v. West*, 216 F.3d 1363, 1367 (Fed.Cir.2000) ("A statute is to be construed in a way which gives meaning and effect to all of its parts."); *Perez v. Merit Sys. Prot. Bd.*, 85 F.3d 591, 594 (Fed.Cir.1996) (A court "must construe a statute so as to give effect, if possible, to every clause and word."). Instead we adopt a more plausible interpretation of the meaning of challenges to "final actions or decisions taken pursuant to this chapter" in § 839f(e)(5). In the context of power sales contracts, an alleged breach challenges an action taken "pursuant to" the Northwest Power Act in one of two instances: (1) when the contractual provision is *mandated* by the Act, or (2) when the contractual provision is a rate the BPA set *by following the procedural requirements of § 839e(i)*, including notice-and-comment and the generation of an administrative record. *See* 16 U.S.C.

§ 839e(i) (2000) (authorizing the BPA to set rates but requiring the BPA to do so via the notice-and-comment procedures of the APA).

Thus, § 839f(e)(5) contemplates that where disputed contract provisions are statutorily mandated or are arrived at via an administrative hearing under the APA in which the pertinent facts are reflected in an administrative record, the Ninth Circuit possesses exclusive jurisdiction. This is so even where a complainant styles her challenge as a breach of contract claim because the challenge is a collateral attack on the Act or regulation. In contrast, where, as here, the alleged breaches of contract pertain to terms that were freely negotiated in an arms-length transaction and where the facts pertinent to those negotiations fall outside an administrative record, nothing in § 839f(e)(5) grants jurisdiction to the Ninth Circuit. Such claims must be brought before the Court of Federal Claims.

This result is consistent with Ninth Circuit precedent. The Ninth Circuit has held that alleged breaches of BPA power sales contracts fall within its exclusive jurisdiction only when facts pertinent to the generation of the disputed contract provision (the price, or "rate") are reflected in an administrative record. *Public Util. Dist. No. 1 of Clark County v. Johnson*, 855 F.2d 647, 650 (9th Cir.1988) ("We therefore hold that claims involving alleged contractual breaches by the agency and based on allegations of facts outside an administrative record must be heard in the claims court.").

In *Clark County*, the BPA argued that review by the Ninth Circuit "should be limited to the administrative record," and that the Ninth Circuit lacked jurisdiction over the breach of contract claims at issue, which were based on "contractual commitments made outside the scope of any administrative record." *Id.* at 648, 650. The

Ninth Circuit agreed, noting that conferring jurisdiction in the Ninth Circuit over fact-specific contract actions would fail to advance the Congressional goal of achieving uniformity in the interpretation of the Northwest Power Act, and would frustrate the grant of jurisdiction to the Court of Federal Claims, a trial court equipped to undertake *de novo* factual inquiry. *Id.* at 650. Thus, the Ninth Circuit concluded that although "Congress did not explain what it meant when it provided for exclusive jurisdiction in this court for some suits and for jurisdiction in 'an appropriate court' for other suits," Congress failed to grant the Ninth Circuit jurisdiction over alleged contractual breaches based on facts not reflected in an administrative record. *Id.* at 649–50. We agree with the Ninth Circuit's interpretation in *Clark County*.

No Ninth Circuit case has announced a rule contrary to the one articulated in *Clark County*. Moreover, subsequent Ninth Circuit decisions finding exclusive jurisdiction under § 839f(e)(5) are consistent with the *Clark County* rule that jurisdiction over alleged contractual breaches involving facts outside an administrative record lies with the Court of Federal Claims. *See, e.g., Kaiser Aluminum*, 261 F.3d at 851 ("A rate is established if it conforms to the procedures found in 16 U.S.C. § 839e(i)," and noting that the disputed FPS–96 rate was so established.); *CP Nat'l Corp. v. Jura*, 876 F.2d 745, 746–47 (9th Cir.1989) (exercising jurisdiction over allegation of misapplication of the BPA's 1983 rate schedule despite characterization of the injury as contractual breach).

In the present case, the Court of Federal Claims possesses jurisdiction over both of Burbank's counts. Count one alleges the breach of a non-statutorily mandated contractual notice provision. No pertinent

facts are contained in an administrative record. The alleged breach of which Burbank complains is the BPA's failure to give timely notice of reversion to the power sale mode. Neither the reversion nor the notice is statutorily mandated. Contrary to the trial court's determination, the statutorily mandated re-conversion to exchange mode is relevant, if at all, only because its occurrence may have contributed to the damages Burbank allegedly suffered. Consequently, the Court of Federal Claims possesses jurisdiction over Burbank's allegation that the BPA breached the notice provision of section 6(c).

Count two also alleges the breach of a non-statutorily mandated provision: the contractual price adjustment provision. Although the BPA is required to include a provision providing for price adjustment, the particular content of the price adjustment, including the manner in which the price is to be adjusted, is not statutorily mandated. The BPA freely negotiated the disputed price adjustment ratio in an arms-length transaction with Burbank, not in an administrative notice-and-comment proceeding. The negotiated ratio depends upon the BPA's priority firm power rates, which are administratively determined. But the particular effect that the administrative determination of these rates has on the BPA's Contract with Burbank results from arms-length contractual negotiation; there is no administrative record, and no exclusive Ninth Circuit jurisdiction. Contrary to the BPA's arguments, Burbank's contract price is not a "rate" because it was not set according to the procedures required of BPA rate-making pursuant to § 839e(i).

Moreover, the price adjustment provision does not constitute "implementation" of the 1996 PF rates, as the BPA argues. Although the BPA set the 1996 PF rates in accordance with the procedures mandated by § 839e(i), and therefore the rate-setting constitutes a final action or decision as expressly enumerated in § 839f(e)(1)(G), the use of those rates as a benchmark in a freely negotiated contract provision fails to constitute "implementation" of the rates. The Regional Act leaves "implementation" undefined, but the word connotes fulfilling the intended effect of the 1996 PF rates, or executing them between those to whom the administrative rate-making procedure applied. According to the term's plain meaning, as well as common sense, "implementation" of PF rates simply cannot refer to every action the BPA takes that references (or is based on) those rates. Rather, "implementation" is limited to applying rates to those who were contemplated as rate-payers in the administrative proceeding that determined the rates. *See* VII *The Oxford English Dictionary* 722 (2d ed. 1989) ("Implement" means "[t]o complete, perform, carry into effect (a contract, agreement, etc.); to fulfill (an engagement or promise).").

Because Burbank was not among the class of entities contemplated as a rate-payer in the administrative rate-making proceeding by which the 1996 PF rates were established and to whom the resulting rates were intended to apply, the BPA did not "implement" those rates for purposes of § 839f(e)(5) when it subsequently agreed, in an arms-length negotiation, to use them as a benchmark for adjusting Burbank's contract price. Thus, as with Count one, Count two falls within the Court of Federal Claims' Tucker Act jurisdiction.

## IV. CONCLUSION

Counts one and two of Burbank's complaint allege breaches of contract. Because the Northwest Power Act did not mandate inclusion of the contractual provisions at issue, and the facts pertinent to the alleged breaches lie outside an administrative record, § 839f(e) fails to confer upon the Ninth Circuit exclusive jurisdic-

tion over Burbank's claims. Thus, the trial court's dismissal was improper. It is therefore reversed and remanded. On remand, the Court of Federal Claims may reinstate its alternative holding dismissing Burbank's claims without prejudice for failure to comply with the requirements of the Contract Disputes Act.

*REVERSED.*

No costs.