GAJARSA, Circuit Judge,
dissenting.
The issue before the court is a fundamental question of jurisdiction between this court and the D.C. Circuit. If the order in mandamus issued by the D.C. Circuit had interpreted the statutory requirements of the Nuclear Waste Policy Act (NWPA), then it would have been within that court’s jurisdiction. Instead, the D.C. Circuit actually forbids the United States from defending itself in a contract action in the Court of Federal Claims. In my judgment, the order in mandamus is clearly directed to the interpretation of the Standard Contract (not the NWPA) and is thus not only outside the jurisdiction of the D.C. Circuit, but also infringes upon the Court of Federal Claims’s exclusive Tucker Act jurisdiction over the administration of contract disputes, thereby impacting the sovereign immunity of the United States and undermining this court’s duty to review the contract decisions of the Court of Federal Claims. I must therefore dissent from the majority’s judgment.
I.
As an initial matter, I am compelled to highlight the procedural posture of this case. Nebraska Public Power District appeals an interlocutory decision of the Court of Federal Claims (the “trial court”), Nebraska Public Power District v. United States, 73 Fed.Cl. 650 (2006), that sus *1378 tained the United States’ collateral attack on the D.C. Circuit’s decisions in Indiana Michigan Power Company v. Department of Energy (“Indiana Michigan Power”), 88 F.3d 1272 (D.C.Cir.1996), and Northern States Power Company v. Department of Energy (“Northern States I”), 128 F.3d 754 (D.C.Cir.1997). The trial court certified its decision for immediate review by this court, and we accepted the appeal.
The appeal was argued before a panel of this court. Thereafter, a poll of the judges in regular active service was conducted to determine whether the appeal should be heard en banc. An en banc hearing was subsequently granted. The en banc court requested supplemental briefing relating to the interpretation and preclusive effects of the D.C. Circuit’s Northern States I decision and heard further argument.
At no time during this process has the trial court issued any decision on the merits of this ease. Accordingly, this court’s review is limited solely to the trial court’s decision before us on interlocutory appeal. The question presented is simple: whether the D.C. Circuit’s order in mandamus in Northern States I precludes the Department of Energy (“DOE”) from relying on a clause of the Standard Contract — the Unavoidable Delays clause — in a breach of contract action brought by several nuclear power companies in the Court of Federal Claims. Importantly, it is not for this court to determine in the first instance whether the DOE should be estopped from relying on the Unavoidable Delays clause or what impact the Unavoidable Delays clause may have on the availability of various contract remedies in light of the DOE’s ongoing failure to accept Spent Nuclear Fuel (“SNF”).
II.
Turning, then, to the limited question at hand, it is undisputed that traditional notions of res judicata and comity[1] require that the valid judgments of other courts be given preclusive effect in the Court of Federal Claims. But it is similarly beyond dispute that only valid judgments are deserving of preclusive effect. See, e.g., Restatement (Second) of Judgments § 17 (1982). And to be valid, a judgment must be within the issuing court’s subject matter jurisdiction. See, e.g., Restatement (Second) of Judgments § 11 (1982) (“A judgment may properly be rendered against a party only if the court has authority to adjudicate the type of controversy involved in the action.”).
This does not mean, of course, that a judgment of questionable validity is always susceptible to collateral attack. See Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n. 9, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982); Christopher Village v. United States, 360 F.3d 1319, 1329-30 (Fed.Cir.2004). Rather, “[w]hen a court has rendered a judgment in a contested action, the judgment precludes the parties from litigating the question of the court’s subject matter jurisdiction in subsequent litigation except if: (l)[t]he subject matter of the action was so plainly beyond the court’s jurisdiction that its entertaining the action was a manifest abuse of authority; or (2)[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or *1379 agency of government.” Restatement (Second) of Judgments § 12 (1982).
On several occasions, the Supreme Court has taken the opportunity to address the circumstances under which a collateral attack to an extra-jurisdictional judgment may be maintained. For example, in United States v. United States Fidelity & Guarantee Co., the Court considered whether “a former judgment against the United States on a cross-claim, which was entered without statutory authority, fixing a balance of indebtedness to be collected as provided by law, [is] res judicata in [a subsequent] litigation for collection of the balance.” 309 U.S. 506, 507, 60 S.Ct. 653, 84 L.Ed. 894 (1940). The Court decided that such a judgment was without res judicata effect, explaining: “It has heretofore been shown that the suability of the United States ... depends on affirmative statutory authority. Consent alone gives jurisdiction to adjudge against a sovereign. Absent that consent, the attempted exercise of judicial power is void.” Id. at 514, 60 S.Ct. 653. See also Kalb v. Feuerstein, 308 U.S. 433, 438-39, 60 S.Ct. 343, 84 L.Ed. 370 (1940) (permitting collateral attack on judgment where Congress had limited the issuing court’s jurisdiction); Durfee v. Duke, 375 U.S. 106, 114, 84 S.Ct. 242, 11 L.Ed.2d 186 (1963) (“To be sure, the general rule of finality of jurisdictional determinations is not without exceptions. Doctrines of federal pre-emption or sovereign immunity may in some contexts be controlling.”).
Relying on this precedent, this court has established a framework for determining when we will sustain a collateral attack. In Christopher Village v. United States, we considered whether a decision of the Fifth Circuit, holding that the Department of Housing and Urban Development (“HUD”) had violated its statutory and contractual duties, should be given res ju-dicata effect by the Court of Federal Claims. 360 F.3d 1319, 1324-26 (Fed.Cir.2004). The Fifth Circuit had explained that its ruling was a “predicate for a damages action against HUD in the Court of Federal Claims.” Christopher Village v. Retsinas, 190 F.3d 310, 315 (5th Cir.1999). Ultimately, we held that if the prior decision was (a) issued without subject matter jurisdiction and (b) the court’s lack of jurisdiction “directly implicates issues of sovereign immunity,” then the prior decision should be considered void and without res judicata effect. Christopher Village, 360 F.3d at 1332 (quoting Int’l Air Response v. United States, 324 F.3d 1376, 1380 (Fed.Cir.2003)).[2] These requirements are met when a district court or one of the circuit courts of appeals decides an issue that is properly within the exclusive jurisdiction of the Court of Federal Claims. Id. at 1332-33. Applying this framework, we determined that the Fifth Circuit’s decision was void and should not be given preclu-sive effect. Id. at 1333.
The majority here does not disagree that the Christopher Village framework should guide our decision in the present appeal. Instead, applying that framework, the majority somehow finds that the D.C. Circuit’s writ of mandamus in Northern States I was within that court’s jurisdiction. I cannot agree. In my judgment, the D.C. Circuit established a clear predicate to a damages action and exceeded its *1380 jurisdiction when it issued the writ of mandamus in Northern States I; that extra-jurisdictional act implicates issues of sovereign immunity by interfering with the exclusive jurisdiction of the Court of Federal Claims.
III.
The D.C. Circuit's jurisdiction is defined by the NWPA, which provides in relevant part: “Except for review in the Supreme Court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action ... for review of any final decision or action of the Secretary [of Energy], the President, or the Commission under this part.” NWPA, § 119 (codified at 42 U.S.C. § 10139(a)(1)(A)). In PSEG Nuclear, LLC v. United States, this court acknowledged “that agency actions mandated under Title III [of the NWPA] which relate to the creation of repositories for spent nuclear fuel fall within the class of actions subject to review by the courts of appeals under section 119.” 465 F.3d 1343, 1349 (Fed.Cir.2006). We explained, however, that the courts of appeals’ section 119 jurisdiction is limited:
[S]eetion 302 of the NWPA only required that the DOE include certain obligations in its contracts. Therefore, judicial review as to whether the DOE properly incorporated these obligations within its contracts may fall within the jurisdiction conferred to the courts of appeals in section 119. However, the performance of and any damages for failure to meet those obligations were not provided for by statute. The claims at issue here involve only issues of whether the DOE breached its contractual obligations, and if so, to what damages, if any, PSEG is entitled for the breach. Because these are not within the DOE’s statutory obligations under the NWPA, City of Burbank [v. United States, 273 F.3d 1370 (Fed.Cir.2001),] does not compel us to conclude that section 119 of the NWPA strips the Claims Court of its Tucker Act jurisdiction over PSEG’s claim merely because the claim involves a statutorily mandated provision.
Id. at 1350. Similarly, in Wisconsin Electric Power v. Department of Energy, the D.C. Circuit decided that, although the NWPA “grants the court jurisdiction over cases seeking review of: (1) final action taken by the agency pursuant to the NWPA, and (2) the agency’s failure to take any action required by the NWPA[,] ... a contract breach by the DOE does not violate a statutory duty. The Court of Federal Claims, not this court, is the proper forum for adjudicating contract disputes.” 211 F.3d 646, 648 (D.C.Cir.2000) (internal quotation marks and citation omitted). The D.C. Circuit’s jurisdiction— and the full extent to which the United States waived its sovereign immunity to suit in the regional courts of appeals — is thus limited to review of agency action or inaction under the statute itself.[3] Accordingly, the disagreement here boils down *1381 simply to whether the D.C. Circuit’s Northern States I order is directed to agency action under the NWPA or to agency action in a contract dispute. In my view, it is unquestionably directed to and aimed at the contract dispute. By doing so, the D.C. Circuit acted beyond its statutory jurisdiction. The majority parses this issue by concluding that the mandamus order “did not address any issue of contract breach, direct the implementation of any remedy, or construe any contract defense” but rather only directed the DOE to comply with its statutory obligations. Maj. Op. at 1376. Notwithstanding its cleverly worded interstitial attempt in limiting the interpretation of liability by the D.C. Circuit, the majority cannot avoid the obvious legal conclusion that this affects the damages imposed upon the United States. The majority’s position is clearly erroneous.
Beginning in the opening paragraph of the Northern States I decision, the D.C. Circuit condemns the “DOE’s current approach toward contractual remedies” and “preclud[es] DOE from advancing any construction of the Standard Contract that would excuse its delinquency on [certain grounds].” 128 F.3d at 756. Elsewhere in its opinion, the D.C. Circuit states: “Petitioners’ ability to enforce the contract would be frustrated if DOE were allowed to operate under a construction of the contract inconsistent with our prior conclusion that the NWPA imposes an obligation on DOE without qualification or condition.” Id. at 759 (internal quotation marks omitted). Indeed, the court explained that its writ “necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of acts of Government in either its sovereign or contractual capacity.” Id. at 760 (internal quotation marks omitted). There is no question that throughout its Northern States I opinion, the D.C. Circuit targets the interpretation of the Standard Contract and the way in which a contract action may proceed. Under our decision in PSEG, this is unquestionably outside the D.C. Circuit’s jurisdiction and is a direct encroachment on the jurisdiction of our court and that of the Court of Federal Claims. PSEG, 465 F.3d at 1350 (explaining that the D.C. Circuit does not have jurisdiction over questions concerning “whether the DOE breached its contractual obligations, and if so, to what damages, if any [the utility] is entitled for the breach” because these issues are not “within the DOE’s statutory obligations” but exist entirely by way of the contract).[4]
Indeed, even the D.C. Circuit recognized that “breach by the DOE [of the Standard Contract] does not violate a statutory duty.” Northern States Power Co. v. Dep’t of Energy, No. 97-1064, 1998 WL 276581, at *2 (D.C.Cir. May 5, 1998) (per curiam). But the D.C. Circuit’s mandamus is directed precisely and explicitly to the issue of “remedies” for a breach. According to the D.C. Circuit, because the statute required an unconditional acceptance of SNF by January 31, 1998, the DOE could not defeat the utilities’ claims for damages by arguing that the Standard Contract’s Unavoidable Delays clause applied. But an inquiry into whether a contract contains a certain term is separate from an inquiry into what circumstances entitle a party to *1382 a remedy for breach of that term. The NWPA permits the D.C. Circuit to perform the former inquiry, but not the latter. See PSEG, 465 F.3d at 1350.
The text of the Unavoidable Delays clause demonstrates that the inquiries are separate. It states that “[n]either the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform.” 10 C.F.R. § 961.11 at Article IX.A. (emphasis added) (1983). In other words, the issue of remedy, and specifically whether there should be no remedy because of “unavoidable delay,” only applies if a party has failed to perform its obligations under the contract. Therefore, contrary to the premise of the D.C. Circuit’s mandamus, whether the DOE uses the Unavoidable Delays clause to minimize or prevent having to pay damages for failing to meet the “unconditional obligation” to begin disposing of SNF by January 31, 1998, is a separate inquiry from whether the contract properly incorporates the statutorily mandated unconditional deadline into its terms. Moreover, the statute is entirely silent on the issue of contractual remedies (or even whether the contract has to provide any monetary damages at all). Therefore, there is no reasonable argument here that the D.C. Circuit’s jurisdiction could extend to any reliance by the DOE on the Standard Contract’s Unavoidable Delays clause.
Additionally, the D.C. Circuit’s writ of mandamus prohibits the DOE from construing the Unavoidable Delays clause to excuse its failure to dispose of SNF by January 31, 1998. See Northern States I, 128 F.3d at 756 (“We ... issue a -writ of mandamus precluding DOE from advancing any construction of the Standard Contract that would excuse its delinquency on the ground [of Unavoidable Delay].”). This order is no different, than a declaratory judgment construing the Unavoidable Delays clause as excluding delay caused by the government’s failure to prepare a permanent repository or storage facility for the SNF by January 31, 1998. A declaratory judgment as to the proper construction of a contractual term is a quintessential adjudication of a contract dispute and can only be adjudicated in the Court of Federal Claims. Wisconsin Elec. Power Co., 211 F.3d at 648 (“The Court of Federal Claims, not this court, is the proper forum for adjudicating contract disputes.”).
The majority concedes that the D.C. Circuit interpreted the Unavoidable Delays clause.[5] Maj. Op. at 1376 (“[The mandamus order] did not ... construe any contract defense except to the extent that the government’s proposed interpretation of the contract would conflict with the statutory directive of section 302(a)(5).”) (emphasis added). Yet, inexplicably, the majority considers the D.C. Circuit’s action “not meaningfully different” from the D.C. Circuit’s statutory construction of the NWPA in Indiana Michigan Power. Maj. *1383 Op. at 1375. The NWPA, as construed by the D.C. Circuit, obligates the DOE to accept SNF by January 31, 1998, and to include such an unconditional obligation in its Standard Contracts. Indiana Michigan Power, 88 F.3d at 1277. No one disputes that the Standard Contract contains such an unconditional obligation. Whether the DOE then nullified this provision by interpreting the Unavoidable Delays clause to excuse its non-perfonnance is an entirely different issue that involves contract interpretation, not statutory construction. While the D.C. Circuit’s holding in Indiana Michigan Power will undoubtedly inform a court’s interpretation of whether or not having a repository or facility constitutes Unavoidable Delay under the contract, relying on statutory provisions to interpret contractual ones does not make the interpretive task any less grounded in an issue of contract interpretation. The majority fails to recognize this distinction when it approvingly notes that “based on its interpretation of the NWPA, the D.C. Circuit held that the government’s failure to have a repository ready by January 31, 1998, could not be excused as unavoidable delay.” Maj. Op. at 1375. This is another failure of the majority to recognize that the D.C. Circuit interpreted the Standard Contract.
The majority’s attempt to maintain comity with the D.C. Circuit by distinguishing between liability qua breach and liability qua damages is, in my view, not intellectually defensible. First, it is unclear to me how this supposed distinction is functional in the context of the Unavoidable Delays clause, which is directed to “liab[ility] for damages.” And second, even if the clause was amenable to linguistic parsing of this sort, I fail to see how such a distinction would place the D.C. Circuit’s Northern States I decision within that court’s jurisdiction. Specifically, the question of breach is every bit as much within the exclusive jurisdiction of the Court of Federal Claims as is the question of damages. Indeed, the predicate decision in Christopher Village, which this court determined was void and without res judicata effect, was directed solely and explicitly to the question of breach, not damages. 360 F.3d at 1324. Accordingly, in my judgment the D.C. Circuit’s Northern States I decision exceeded that court’s jurisdiction; it is not amenable to interpretation so as to give it validity.
IV.
Because the majority holds simply that the D.C. Circuit’s Northern States I decision did not exceed that court’s jurisdiction, it does not need to reach the second prong of the Christopher Village analysis — whether the extra-jurisdictional act implicates the United States’ sovereign immunity. My disagreement over the issue of jurisdiction, however, requires me to continue the analysis. The D.C. Circuit’s extra-jurisdictional writ interferes with the exclusive jurisdiction of the Court of Federal Claims, thereby implicating the United States’ sovereign immunity. As we explained in PSEG:
The Tucker Act generally vests the Court of Federal Claims with jurisdiction to render judgment in government contract disputes. This jurisdiction is supplanted only if, in a specific jurisdictional statute, Congress grants exclusive jurisdiction over a contract dispute to another court. The NWPA did not strip the Court of Federal Claims of its jurisdiction over [breach of contract] claims because it did not vest that jurisdiction in another court.
465 F.3d at 1349 (citations omitted). The APA effects a limited waiver of the United *1384 States’ sovereign immunity from suit. In particular, 5 U.S.C. § 702 states in relevant part:
A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages ... shall not be dismissed nor relief therein be denied on the ground that it is against the United States.... The United States may be named as a defendant in any such action, and a judgment or decree may be entered against the United States----Nothing herein
(2) confers authority to grant relief if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought.
See Consol. Edison Co. of New York, Inc. v. Dep’t of Energy, 247 F.3d 1378, 1382-83 (Fed.Cir.2001) (“Under specified circumstances, the APA waives sovereign immunity for actions challenging agency actions in district court.... Section 702 [of the APA] denies this sovereign immunity waiver to claims for money damages or for claims that seek remedies ‘expressly or impliedly’ precluded by other statutes.”). Section 704 adds a further limitation: “Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review.” 5 U.S.C. § 704. The APA’s waiver is thus tempered by no fewer than three restrictions on suit: (1) the action cannot be for money damages; (2) the action cannot be expressly or impliedly forbidden by another statute; and (3) the action cannot be one for which adequate remedy is available elsewhere.
A.
In Bowen v. Massachusetts, the Supreme Court considered the first restriction on the APA’s waiver of sovereign immunity — that the action may not be for “money damages.” Explaining that not all monetary relief is necessarily “money damages,” the Court held that “money damages” in Section 702 is properly understood as compensatory rather than specific relief. 487 U.S. at 895-97, 108 S.Ct. 2722. The Court then held that the Commonwealth of Massachusetts’s suit was not one “seeking money in compensation for the damage sustained by the failure of the Federal Government to pay as mandated; rather, it [was] a suit seeking to enforce the statutory mandate itself, which happens to be one for the payment of money.” Id. at 900, 108 S.Ct. 2722 (emphasis removed).
The D.C. Circuit’s writ of mandamus in Northern States I presents a scenario that is the converse of Bowen. The D.C. Circuit did not offer specific relief; indeed, it acknowledged that it has no authority to do so. Rather, the D.C. Circuit ordered what is, in effect, compensatory relief. Specifically, the D.C. Circuit interpreted contractual terms by distinguishing between the treatment of avoidable and unavoidable delays under Article IX of the Standard Contract, Northern States I, 128 F.3d at 759 (explaining that avoidable delays result in money damages whereas unavoidable delays create no liability), and precluded the DOE from relying on the unavoidable delays provision, id. at 760. The D.C. Circuit exceeded its jurisdiction in doing so and by its writ thus obligated the DOE to pay compensatory damages in a subsequent breach of contract action. Therefore, even under Bowen’s broad view of Section 702, the D.C. Circuit’s writ of *1385 mandamus exceeds the “other than money damages” limitation on the APA’s waiver of sovereign immunity.
Since Bowen, the Supreme Court has adopted a narrower and clearer position on the issue:
Almost invariably ... suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for ‘money damages,’ as that phrase has traditionally been applied, since they seek no more than compensation for loss resulting from the defendant’s breach of legal duty.
Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210, 122 S.Ct. 708, 151 L.Ed.2d 635 (2002) (internal quotation marks and citation omitted). Certainly, the D.C. Circuit’s writ is addressed to nothing more than compensation for loss resulting from the DOE’s alleged breach of its contractual obligations. It would thus appear to be beyond question that the writ runs afoul of the Supreme Court’s most recent view of “money damages” and is, therefore, beyond the scope of the APA’s waiver of sovereign immunity.
The precedents of this court require the same result. For example and as acknowledged by the majority, in Christopher Village we held that “[a] party may not circumvent the Claims Court’s [now the Court of Federal Claims’s] exclusive jurisdiction by framing a complaint in the district court as one seeking injunctive, declaratory or mandatory relief where the thrust of the suit is to obtain money from the United States.” 360 F.3d at 1328 (quoting Consolidated Edison Co. of New York, Inc. v. Dep’t of Energy, 247 F.3d 1378, 1385 (Fed.Cir.2001)). But the majority fails to recognize that the D.C. Circuit did exactly that in Northern States I — it circumvented the Court of Federal Claims’s exclusive jurisdiction by crafting its order as a writ of mandamus that interprets the Standard Contract thereby removing the contractual shield of protection held by the United States. This is a subterfuge to provide the power companies with a means to obtain money damages from a now-defenseless United States in a later breach of contract action. This clearly is tantamount to a money mandate infringing upon our jurisdiction, the jurisdiction of the Court of Federal Claims, and the sovereign immunity of the United States.
B.
Moreover, as explained above, contract claims are within the exclusive jurisdiction of the Court of Federal Claims. See Roberts v. United States, 242 F.3d 1065, 1068 (Fed.Cir.2001). Therefore, the Tucker Act, which waives sovereign immunity and confers jurisdiction on the Court of Federal Claims in cases sounding in contract, “impliedly forbids relief other than the remedy provided by the Court of Federal Claims.” Presidential Gardens Assocs. v. United States, 175 F.3d 132, 143 (2d Cir.1999) (quotation marks omitted).
There is little room for debate that Nebraska Power’s rights are contractual. But for the existence of the contract, there would be no right at all. Nor can it be contested that the relief sought in Northern States I was contractual — Nebraska Power requested a writ of mandamus ordering the United States to perform on its contract.[6] Moreover, the relief granted by the D.C. Circuit was contractual — a writ of *1386 mandamus precluding the DOE from relying on a contract defense in a future breach-of-contract action. The action before the D.C. Circuit in this case neither presented an independent statutory claim, nor would a breach of contract by the DOE be contrary to statute. See N. States Power Co., 1998 WL 276581, at *2 (D.C.Cir. May 5, 1998) (per curiam) (“While the statute requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty....”). The D.C. Circuit’s writ is thus properly viewed as contractual relief, cf. Katz v. Cisneros, 16 F.3d 1204, 1209 (Fed.Cir.1994) (distinguishing between “declaratory relief in the performance of a contract” and “judicial interpretation of a federal regulation”), and is impliedly forbidden by the Tucker Act. For this additional reason, the D.C. Circuit’s action exceeded the APA’s waiver of sovereign immunity.
C.
Finally, the APA’s waiver of sovereign immunity does not apply if an adequate remedy is available elsewhere. 5 U.S.C. § 704. The availability of monetary damages in the Court of Federal Claims is an adequate remedy under Section 704. See Telecare Corp. v. Leavitt, 409 F.3d 1345, 1349 (Fed.Cir.2005); Christopher Village, 360 F.3d at 1327 (“[A] litigant’s ability to sue the government for money damages in the Court of Federal Claims is an adequate remedy that precludes an APA waiver of sovereign immunity in other courts.”) (internal quotation marks omitted). Here, as the D.C. Circuit recognized, monetary damages are available to the utilities in the Court of Federal Claims. See Northern Power I, 128 F.3d at 756 (“[T]he Standard Contract between DOE and the utilities provides a potentially adequate remedy... .”). Accordingly, an adequate remedy is available, and the APA does not waive the United States’ sovereign immunity in the D.C. Circuit.
Notwithstanding the protective fervor with which the majority persists in defending the jurisdiction of the D.C. Circuit by interstitially parsing liability and damages, I believe that the D.C. Circuit exceeded the limits of its jurisdiction under section 119 of the NWPA when it granted the writ of mandamus ordering a contractual remedy. It trespasses upon and limits the jurisdiction of our Court and the Court of Federal Claims. This essentially emasculates our law established by Christopher Village. Without a basis of jurisdiction under section 119, the D.C. Circuit’s opinion directly interfered with the government’s sovereign immunity. Unlike its decision in Indiana Michigan Power, the D.C. Circuit’s writ of mandamus in Northern States I directly impacts the ability of the government to defend itself against having to pay money damages (and indirectly, will also result in the payment of damages), is forbidden by the Tucker Act, and thus falls outside the limits of Section 702’s waiver of sovereign immunity. I can appreciate the majority’s attempt to avoid criticism of a sister court, but the sheer mushy applesauce consistency of the majority opinion in avoiding a jurisdictional confrontation with the D.C. Circuit should *1387 be obvious.[7] On this basis, the trial court’s ultimate holding to void the mandamus was correct and should be affirmed.

. Comity, both in the notional sense of courteous respect and in the more legalistic sense of the federal full faith and credit statute, 28 U.S.C. § 1738. See Davis v. Davis, 305 U.S. 32, 40, 59 S.Ct. 3, 83 L.Ed. 26 (1938) (establishing that the federal full faith and credit statute extended the Full Faith and Credit Clause to federal courts).

. The D.C. Circuit has similarly held: "[I]t is axiomatic that, before a judgment can have issue preclusive effect under the doctrines of either res judicata or collateral estoppel, that judgment must be valid.” Davis v. Chevy Chase Fin. Ltd., 667 F.2d 160, 172 (D.C.Cir.1981).

. It is undisputed that the D.C. Circuit's authority to issue writs under the All Writs Act, 28 U.S.C. § 1651(a), does not exceed the boundaries of the court's jurisdiction. See Clinton v. Goldsmith, 526 U.S. 529, 535, 119 S.Ct. 1538, 143 L.Ed.2d 720 (1999); In re Princo Corp., 478 F.3d 1345, 1351 (Fed.Cir.2007) ("The authority of the courts of appeals to issue the writ ‘is restricted by statute to those cases in which the writ is in aid of their respective jurisdiction.'") (quoting Roche v. Evaporated Milk Ass’n, 319 U.S. 21, 25, 63 S.Ct. 938, 87 L.Ed. 1185 (1943)).

. And, of course, if the D.C. Circuit does not have jurisdiction under § 119, it does not have any jurisdiction at all, since actions not brought under the NWPA’s review provision, even if properly brought under the general provisions of the Administrative Procedure Act, would have to be filed in the district courts.

. Even the concurring opinion agrees that the D.C. Circuit interpreted the Standard Contract by establishing government liability. See Concur. Op. at 1377 ("I read the majority as establishing government liability ..."}. But it then attempts to cabin the scope of the majority's opinion by arguing that "it remains open for the government to argue that the Unavoidable Delays clause bars a damages award (as opposed to some other contractual remedy such as restitution).” Id. at 1377. This argument, however, is in the same league as the interstitial argument made by the majority and has no more legs to stand upon than the majority's opinion.

. The power companies came to court dressed in sheep’s clothing but in fact ob *1386 tained a result that would be the envy of any pack of wolves.

. See Zuni Public School Dist. No. 89 v. Dep't of Educ., 550 U.S. 81, 113, 127 S.Ct. 1534, 167 L.Ed.2d 449 (2007) (Scalia, J., dissenting).